**Gilbert F. SIELING, Sr., Petitioner-Appellant,**

v.

**Frank A. EYMAN, Warden, Arizona State Prison, Respondent-Appellee.**

**No. 71-2784.**

United States Court of Appeals, Ninth Circuit.

April 23, 1973.

Dennis J. Skarecky (argued), Post-Conviction Legal Assistance Clinic, Tucson, Ariz., for petitioner-appellant.

William P. Dizon, Asst. Atty. Gen. (argued), Gary K. Nelson, Atty. Gen., Phoenix, Ariz., for respondent-appellee.

Before MERRILL, KOELSCH, and DUNIWAY, Circuit Judges.

KOELSCH, Circuit Judge:

Gilbert F. Sieling was charged by information in the Arizona Superior Court with three counts of assault with a deadly weapon, and five counts of assault to commit murder. At his arraignment, the court entered a plea of not guilty for him and granted a defense motion for the appointment of two psychiatrists to examine Sieling to determine whether he was competent to stand trial. When the two psychiatrists disagreed on the issue, the court ordered a third expert to examine the defendant. At a hearing, held pursuant to Rule 250, Arizona Rules of Criminal Procedure, 17 A.R.S., the reports of the examining psychiatrists were considered, and each of the experts testified. All three of the psychiatrists expressed the opinion that, at the time of the alleged crimes, Sieling was insane under the applicable M'Naghten standard; however, two of them were of the opinion that he was then able to understand the proceedings and to assist counsel in his defense. The trial court concluded that Sieling was competent to stand trial.

Approximately a month later, shortly before the scheduled trial date, Sieling notified the court that he wished to change his plea. He was brought into court, and a brief inquiry was made by defense counsel, at the court's direction, regarding Sieling's understanding of the charge and the consequences of a guilty plea. A plea of guilty was entered on the counts of assault with a deadly weapon and, pursuant to a plea bargain, the court granted the prosecution's motion to dismiss the five remaining counts in the information. The court then sentenced Sieling to consecutive terms of 8–10, and 4–6 years.

After exhausting all available state post-conviction remedies, Sieling petitioned the United States District Court for a writ of habeas corpus. The matter is here on the court's judgment dismissing his petition.

Sieling bases his right to relief on the ground that his guilty pleas were invalid. He contends that he was mentally incompetent to enter them. In substance, his argument is that neither the finding of competency to stand trial nor the guilty plea proceedings, held in the trial court, adequately resolved the question of his competency to waive his constitutional right to trial. He points out that his competency to make such a waiver was not at issue at the competency hearing, and accordingly, the trial court never made a finding on that issue; further, he argues that the colloquy immediately preceding his guilty plea cannot suffice to resolve the question, because it consisted of no more than the usual inquiry concerning voluntariness, lack of coercion, and understanding of the consequences, and therefore did not extend into the area of his mental competency at all.

Support for Sieling's argument is found in Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). In that decision, the Supreme Court gave recognition to a distinction between a defendant's mental competency to stand trial, and his competency to waive his right to counsel at trial. The Court held that a trial court finding, under Arizona Criminal Rule 250, that the defendant was competent to assist counsel in his defense, did not suffice as a finding that he was also competent to waive such a fundamental constitutional right as the right to the assistance of counsel.

A plea of guilty "is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed. 2d 653]. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491]. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923]." Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Consequently, the courts must exercise the "utmost solicitude of which [they] are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin v. Alabama, *supra,* 395 U.S. at 243–244, 89 S. Ct. at 1712.

▉▉ It is of course well settled that a defendant in a criminal trial cannot be deemed to abandon any fundamental constitutional protection unless there is both "an intelligent and competent waiver by the accused." Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Westbrook v. Arizona, *supra.* In the typical case—that is, when the defendant's sanity or mental capacity has not been put in issue— the determination of the validity of the waiver by the defendant can be assessed with an assumption that he is mentally capable of making the weighty decisions involved in giving up his right to counsel, cross-examination, trial by jury, or his privilege against self-incrimination. However, where a substantial question of a defendant's mental capacity has arisen in a criminal proceeding, it is logically inconsistent to suggest that his waiver can be examined by mere reference to those criteria we examine in cases where the defendant is presumed competent, since in the latter cases no inquiry into the defendant's mental capacity to make the waiver is made. Cf.

Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). If a defendant who can be presumed competent pleads guilty, a court can assess the adequacy of his waiver by examination of the objective evidence in the record, such as the advice given him by the court as to the nature of the charge, the waivers resulting from the plea and the sentencing prospects, as well as the defendant's statements or responses made in open court. Where the question of a defendant's lack of mental capacity lurks in the background, however, the same inquiry, while still necessary, fails to completely resolve the question of whether the defendant can properly be said to have had a "rational, as well as a factual, understanding" [Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Schoeller v. Dunbar, 423 F.2d 1183, 1184 (9th Cir. 1970)] that he was giving up a constitutional right. *Cf.* Rees v. Peyton, 384 U. S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).

▉ We think *Westbrook* makes it plain that, where a defendant's competency has been put in issue, the trial court must look further than to the usual "objective" criteria in determining the adequacy of a constitutional waiver. In *Westbrook, supra,* although the state court had, after hearing, concluded that the defendant was mentally competent to stand trial, the Supreme Court deemed it essential that a further "inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel . . ." was required. 384 U.S. at 150, 86 S.Ct. 1320. It was not suggested there, nor has it been in this case, that the state court's determination that the accused was competent to stand trial was incorrect. The clear implication, then, is that such a determination is inadequate because it does not measure the defendant's capacity by a high enough standard. While the Court did not suggest a standard, it is reasonable to conclude from the Court's language that the degree of competency required to waive a constitutional right is that

degree which enables him to make decisions of very serious import. Judge Hufstedler, in *Schoeller v. Dunbar*, 423 F.2d 1183, 1194 (9th Cir. 1970) has suggested the following standard: "A defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea." [1] We think this formulation is the appropriate one, for it requires a court to assess a defendant's competency with specific reference to the gravity of the decisions with which the defendant is faced. [2]

■ The examination and inquiry into Sieling's competency, made by the state court here, was not directed at such a level of competency. Under Rule 250, Arizona Rules of Criminal Procedure, the trial court's inquiry is directed to whether a defendant is ". . . able to understand the proceedings and to assist in his defense." In *Westbrook*, that same Arizona determination was held insufficient for waiver of counsel purposes. If such a determination is deficient on the facts of *Westbrook*, we think *a fortiori* it is a deficient basis for upholding a plea of guilty.

In our opinion, this court's per curiam decision in *Small v. Arizona*, 455 F.2d 456 (9th Cir. 1972) does not compel a contrary result. In *Small* the court upheld a guilty plea against an attack based on the adequacy of the state court's determination that the petitioner was competent to stand trial, a determination made after the entry, but before the trial court's acceptance, of the plea. The decision did not, however, discuss the standard of competency involved in these determinations; that question was not briefed and was therefore not before the court. Accordingly, *Small* does not control our decision.

■ As to the proper form of relief, we think a remand to the state court may be adequate to resolve the question of Sieling's competency to plead guilty. The Supreme Court in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) faced a problem of determining a defendant's competency some six years after the defendant was tried. There the Court concluded that a retrospective determination of the defendant's competency could not satisfactorily be made because inter alia, "expert witnesses would have to testify solely from information contained in the printed record." 383 U.S. at 387, 86 S.Ct. at 843. That was so, because the trial court had never inquired into the competency question, and thus medical experts had never examined Robinson at the time of the trial. Therefore, the only proper course was a new trial. Here, however, Sieling was examined within a month before his plea by three medical experts, each of whom submitted reports and testified before the trial court. The scope of their examinations and the content of the opinions they expressed may be sufficient for the trial court to determine whether or not their opinions can support a finding that Sieling was competent to plead guilty as well as to stand trial. [3] We note, however, that one

---

1. Judge Hufstedler dissented in *Schoeller*. However, her quoted statement was not made with respect to any matter in issue in that case, nor was it the subject of attention by the majority, but constituted simply her passing observation on an unrelated question.

2. In *Rees v. Peyton, supra,* the Supreme Court held that Rees could not be permitted to withdraw his pending certiorari petition, where his counsel had put before the Court a question of Rees' competence, until it could be determined "whether he

has a capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or, on the other hand, whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in these premises." 384 U.S. at 314, 86 S.Ct. at 1506.

3. It should be noted that the transcript of the psychiatrists' testimony before the state trial court is not in the record on this appeal, nor, apparently, was it before the District Court. The District Court's

of the experts disagreed even as to Sieling's competence to stand trial, and the trial court may conclude that it is impossible from the present state of the record to make the determination we hold is required. However, we conclude that the trial court should have an opportunity to review the psychiatric evidence in light of our opinion, to decide in the first instance, whether there is sufficient evidence upon which to make that determination.

Accordingly, the judgment is reversed and the cause remanded to the District Court to grant the writ, unless within 60 days the State obtains trial court review of the psychiatric evidence in light of the views expressed herein. The District Court shall retain jurisdiction of the cause; if the state court vacates the pleas, then the cause shall be dismissed; should relief be denied the District Court shall then review the matter in conformity with this opinion.

Reversed and remanded.

conclusion that the state court inquiry was full and fair is therefore erroneous. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Selz v. California, 423 F.2d 702 (9th Cir. 1970).