James John MAKAL,
Petitioner-Appellant,

v.

STATE OF ARIZONA and Harold G. Cardwell, Superintendent, Arizona State Prison, Respondents-Appellees.

No. 75–1077.

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1976.

John F. Munger (argued), of Verity & Smith, Tucson, Ariz., for petitioner.

William J. Schafer, III, Atty. (argued), Phoenix, Ariz., for respondents.

Before CHAMBERS, CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Petitioner, a prisoner in state custody, unsuccessfully sought a writ of habeas corpus from the United States District Court for the District of Arizona. We have jurisdiction of his appeal under 28 U.S.C. § 2253. Petitioner pleaded guilty to a charge of first degree murder on October 10, 1969, in the Superior Court of Pima County, Arizona. He now contends that the trial court erred in accepting this plea without making

a specific determination of his mental competency to enter it.

## I.

On the evening of May 24, 1964, in Tucson, Arizona, James Makal, petitioner, strangled his wife and his two minor children. He then attempted to commit suicide by cutting his wrists and throat and swallowing ant poison and furniture polish. He was subsequently charged with three counts of first degree murder. Before trial he was twice committed to the state hospital as a result of hearings held under state procedure [1] at which the court found that the defendant's mental illness prevented him from assisting counsel in the defense of his case.

The defendant was ultimately found competent to stand trial and was tried on three counts of murder. His defense was not guilty by reason of insanity. The jury found him guilty on each of the three counts and recommended the death penalty. Judgment and sentence of death were then imposed. The Supreme Court of Arizona reversed and remanded for a new trial because of error at the trial. *Arizona v. Makal,* 104 Ariz. 476, 455 P.2d 450 (1969), *cert. denied,* 404 U.S. 838, 92 S.Ct. 128, 30 L.Ed.2d 71 (1971).

Prior to retrial, petitioner was given another competency hearing on September 23, 1969, pursuant to Ariz.Rev.Stat. § 13–1621. Two doctors testified both on direct and cross-examination, and each concluded that Makal understood the nature of the proceedings against him and was able to assist his attorneys in his defense. There was no evidence offered to the contrary, and he was found competent to stand trial. Several days thereafter, but before trial, petitioner entered into a plea bargain wherein two of the murder counts were dropped and an amended information was filed charging murder in the first degree as to the remaining count. A hearing was held on October 10, 1969, with petitioner present with his two counsel for the purpose of presenting the terms of the bargain to the court. The terms were explained. Petitioner's counsel thereupon waived any preliminary hearing "or any other formalities attendant upon the amended information" and offered to enter a plea of guilty. The petitioner was present and the court accepted the amended information and dismissed the other two counts. The court then addressed the petitioner and his two attorneys:

"THE COURT: Are you prepared to enter a plea to the amended Information in this matter?

"THE DEFENDANT: That's right.

"THE COURT: Charging you with Murder, First Degree?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Have you had an opportunity to see this and read it?

"THE DEFENDANT: My attorneys have explained it to me, Your Honor.

"THE COURT: Very well. What is your plea then to the amended Information?

"THE DEFENDANT: Guilty.

"THE COURT: Before formally accepting this plea I want to be sure you realize exactly what you are doing before pleading guilty to Murder, First Degree. You realize that in sentencing in this matter I have two alternatives: One is life imprisonment and the other death. Do you realize that?

"THE DEFENDANT: Yes.

"THE COURT: And that no promises have been made to you concerning this, is that correct?

"THE DEFENDANT: No promises have been made, Your Honor.

"THE COURT: Are you doing this of your own free will?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And you understand what the consequences might be completely?

"THE DEFENDANT: Yes, Your Honor.

1. Rule 250, Rules of Criminal Procedure, 17 Ariz.Rev.Stat.

"THE COURT: You have discussed this with your attorneys and this is done after a discussion between the three of you, is that correct?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: I take it this is correct?

"MR. MORSE: Yes, Your Honor.

"MR. REES: Yes, Your Honor.

"THE COURT: You have discussed it and you feel he is completely knowledgeable of the circumstances and this is a completely voluntary plea to this?

"MR. REES: I am personally satisfied speaking on my own behalf. I have discussed this with the Defendant at length, as has Mr. Morse, who can speak for himself.

"MR. MORSE: I have too, Your Honor, and he knows what he is doing.

"THE COURT: You realize in this amended Information, if you desire you have the right to a trial the same as you had before, you realize that?

"THE DEFENDANT: Yes.

"THE COURT: It is your desire to enter a plea of guilty to the amended Information charging you with Murder, First Degree.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Very well. The record may show the Defendant enters a plea of guilty to the amended Information charging the Defendant with the crime of Murder, First Degree." R.T. at 3–5.

Thereafter, the transcript of the testimony of the two doctors at the competency hearing was introduced and the court again addressed the petitioner:

"THE COURT: I will read the amended Information so you realize what you have entered a plea of guilty to, and by your plea of guilty the Court is assuming it is a fact that on or about the 25th day of May, 1964, in Pima County, Arizona, and before the filing of this Information, that the said James John Makal killed James John Makal, Jr., with malice aforethought and premeditation and delibera-

tion, all in violation of ARS 13–451, ARS 13–452 and ARS 13–453. This is what you have entered a plea of guilty to, is this correct?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: By your plea of guilty, then the Court assumes as a fact that you are admitting to the facts that are in the amended Information, is that a fact?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Very well. That is all." R.T. at 6.

On October 16, 1969, at another hearing, the court pronounced judgment of life imprisonment.

Again, petitioner appealed his life sentence to the Supreme Court of Arizona upon the ground that he was incompetent to plead guilty and that the judgment and the sentence were therefore void. He also asserted that he should receive credit for time served. In a unanimous opinion, the court stated:

"Makal could have chosen to be retried before a jury on three counts of murder, but decided instead to plead guilty to the lesser charge. The trial judge who received the guilty plea was careful and thorough in her questioning of the defendant in order to determine that his guilty plea was entered into knowingly and voluntarily. We find no merit in the argument by defendant's counsel that defendant was incompetent to plead guilty. The trial court was eminently correct in accepting the guilty plea." *Arizona v. Makal,* 106 Ariz. 591, 480 P.2d 347, 350 (1971) (In Banc).

The petition for a writ of habeas corpus was filed April 23, 1974, and alleged illegal confinement because:

"1. the failure of the Court to make a proper determination of petitioner's competence to waive the constitutional guarantees which were foreclosed by petitioner's plea of guilty, violated petitioner's constitutional right of due process;

2. the failure of the trial judge to place substantial facts in the record to demonstrate that petitioner knowingly and voluntarily waived his insanity defense and pled guilty because he felt it to be in his better interests, was error; . . ."

The petition also asserted double jeopardy and denial of equal protection in not giving petitioner credit for time served. The district court denied the petition as based upon the first two reasons but granted it to the extent that the sentence should have given credit for time served. Pending further proceedings, resentencing by the state court to give the credit requested was completed, and the district court thereupon denied the writ in its entirety. Petitioner still claims habeas relief to obtain credit for the months spent in compulsory confinement at the state hospital.

## II.

We consider first the legal basis for the constitutional due process claim. Petitioner points to dictum in the first opinion of the Arizona Supreme Court, *Arizona v. Makal, supra,* 455 P.2d 452, which stated:

"But here by any standard the proof is nearly overwhelming that Makal was insane at the time of the commission of the homicides."

In its decision upon the validity of the plea bargain, the second *Makal* court went into some detail to explain that petitioner used this statement out of context, and that correctly read it did not amount to a finding of fact, nor was it intended to be one. 480 P.2d at 349. This explanation was by a unanimous court which included the author of the opinion from which the quotation was taken. It is clear that the statement was not intended as a dispositive one, and we accept the explanation as it was given.

A more troublesome problem is presented to us by our decision in *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973). There, the defendant had been charged with multiple counts of assault and assault with intent to commit murder. Three psychiatrists, after a thorough examination of the defendant, found him insane at the time the crimes were committed, but two of the three doctors found him competent to stand trial, and the trial court concluded that the defendant was competent. Shortly before trial and approximately a month after the mental examinations, Sieling notified the court that he wished to change his plea:

"He was brought into court, and a brief inquiry was made by defense counsel, at the court's direction, regarding Sieling's understanding of the charge and the consequences of a guilty plea. A plea of guilty was entered . . . and, pursuant to a plea bargain, the court granted the prosecution's motion to dismiss the five remaining counts in the information." *Id.* at 213.

The court in *Sieling* relied upon *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), to emphasize the distinction between a defendant's mental competency to stand trial and his competency to waive his right to counsel at a trial. It emphasized that other constitutional rights are waived by a plea of guilty: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. It thus concluded that a higher standard of competency was required for a guilty plea than that necessary to stand trial. That standard was defined as one in which " '[a] defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea.' " [2] 478 F.2d at 215. The case was remanded to the state court for a determination of whether the record already made there was sufficient to decide the question of competency to plead guilty.

More recently, in *de Kaplany v. Enomoto,* 540 F.2d 975 (9th Cir. 1976), we reviewed *Sieling* in a different factual context. There, after psychiatric reports had pro-

---

2. Judge Hufstedler, dissenting, in *Schoeller v. Dunbar,* 423 F.2d 1183, 1194 (9th Cir.), *cert.* denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

nounced the defendant competent to stand trial and the trial was in progress, there was an outburst by the defendant triggered by the exhibition of a particularly gruesome photograph of the body of his alleged victim. The next day he entered a plea of guilty. Under California procedure, the trial was in three phases: the guilt phase; the sanity phase; and the penalty phase. The guilty plea was accepted after brief questioning by the court. Thereafter, the sanity phase was tried, and upon conflicting psychiatric testimony he was found sane at the time of the commission of the crime. There was no psychiatric testimony on the question of his competency to plead guilty. After acknowledging that the state trial court had not focused its attention on the defendant's competency to plead guilty, we noted that while in *Sieling* there had been a remand to resolve that question, "[w]e do not believe this form of relief is always necessary or appropriate." at 985. We reviewed the record and the findings of the federal district court which considered the petition for relief from the state conviction on the question and concluded that on the basis of the entire case a retroactive determination of competency to plead guilty was possible, and that it was properly made by the district court. We cautioned that we were not establishing a precedent for all cases but only approving a determination made under those unusual circumstances. at 986 n. 11.

We examine the trial court's ruling in the light of the circumstances here and compare them to *Sieling* and to *de Kaplany.* In *Sieling,* at the time of the guilty plea there was only a "brief inquiry" by defense counsel, at the court's direction, regarding *Sieling's* understanding of the charge and the consequences of the guilty plea. The court in *Sieling* noted that this colloquy consisted of nothing more than the "usual inquiry concerning voluntariness, lack of coercion, and understanding of the consequences, and therefore did not extend into the area of his mental competency at all." 478 F.2d at 213. Furthermore, there had been no previous trial of the same issue by which the defendant could have acquired empirical knowledge of the formalities of a trial and the decisions to be made during its course and obtained some idea of the likelihood of success or failure. To a certain extent, the same factors were present in *de Kaplany.* The defendant was not even asked if he realized that the change in his plea could result in the death penalty.

Makal presents several factors that were apparent to him and to his counsel that did not exist in either *Sieling* or in *de Kaplany.* He had already had one jury trial. In that trial the defense claimed he was not guilty by reason of insanity. He presumably had the opportunity to discuss with counsel what evidence was to be produced, his right to take the stand or remain silent, and his right to confront those who were to testify against him. He did not waive a jury trial because he was tried to a jury; he did not waive representation by counsel. *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), because he had competent counsel. He knew the risk he would run by asserting his insanity defense on his retrial because he had already asserted this defense once and the jury had rejected it. As the Supreme Court of Arizona pointed out, he could have chosen to be retried before a jury on three counts of murder, but instead he elected to plead guilty to the single charge. He made a good bargain.

Makal told the court to whom the plea was tendered that he had discussed his plea with both of his lawyers. Each lawyer stated unequivocally that this was true, and that each believed Makal was "completely knowledgeable of the circumstances" and the plea was "completely voluntary." One attorney volunteered that "he knows what he is doing." The court pointed out to him that it had two alternatives in sentencing if the plea was made: "One is life imprisonment and the other death." He was finally asked to state if it was correct that he admitted he killed James John Makal, Jr. (his son) "with malice aforethought and premeditation and deliberation." His answer: "Yes, Your Honor."

The court receiving the plea had before it the reporter's transcript of the hearing on Makal's competency to stand trial. At that hearing, held just 17 days before, both psychiatrists testified that he was competent to stand trial, and that he could understand the proceedings and cooperate with his attorneys. Without more, it seems clear that the validity of petitioner's guilty plea was capable of reconstruction by the district court for the purpose of determining competency.

Viewed in any light, it would appear, that the options open to Makal were few and unattractive. There was nothing of record to indicate the existence of better or more convincing evidence to offer a jury as to his insanity than what had been offered before. The jury had not found it convincing. He had not been able to establish sympathy: the sentence was death. Under those circumstances, the alternative selected by Makal was not unintelligent or unreasoned within the rule of competency. *See North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). It appears to have been distinctly to his advantage.

### III.

■ Petitioner has already been given credit for all presentence time spent in state penal institutions. He has not been given credit for time spent in the state hospital because of his mental illness, although the question was raised below. He claims a violation of the Equal Protection Clause of the Fourteenth Amendment because convicted persons receive credit for all time spent in custody while one who is committed for mental illness obtains none. But there is no constitutional infirmity in reasonable classifications and in the treatment of different classifications differently. *See Salsburg v. Maryland,* 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954); *Missouri v. Lewis,* 101 U.S. 22, 25 L.Ed. 989 (1879).

■ So long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern. Here, there is no suggestion that any such federally protected grounds have been impinged upon. Counsel for petitioner has cited no case, federal or state, that would support his contention, and we have found none. *Ham v. North Carolina,* 471 F.2d 406 (4th Cir. 1973), cited by petitioner, does not support him. Makal was not in jail because he could not afford bail; nor was he in the hospital for reasons of indigency. The state hospital was established for the confinement, treatment, and rehabilitation of the mentally ill. Petitioner had been charged with a capital crime and for his own protection was hospitalized so that a trial, if it occurred at all, would take place only when he was mentally competent to participate and protect his own interests. He was not confined for purposes of punishment, and we cannot find that his stay at the hospital was a part of his punishment for the commission of a crime. Thus, there was no custody related to his guilt for which he need be given credit unless for some reason the state provided for it in its own system. The Supreme Court of Arizona considered this problem when the same contention was presented there and found it to be without merit. *Arizona v. Makal, supra,* 480 P.2d at 350-51. We find no federal constitutional problem involved. *See Pernell v. Rose,* 486 F.2d 301 (6th Cir. 1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1581, 39 L.Ed.2d 882 (1974).

The judgment is Affirmed.