**John Henry BYRD, Petitioner,**

v.

**Harold J. CARDWELL, Warden, Arizona State Prison, Respondent.**

**Civ. No. 77–13 PHX (WEC).**

United States District Court,
D. Arizona.

March 11, 1977.

John Henry Byrd, pro se.

Asst. Atty. Gen. Robert S. Golden, Phoenix, Ariz., for respondent Harold J. Cardwell.

## ORDER

CRAIG, Chief Judge.

The question raised by this petition for writ of habeas corpus is whether or not petitioner was unconstitutionally denied a hearing on the issue of his competence to plead guilty under *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973).

Sieling requires a hearing whenever a trial judge has, or should have, a good faith doubt as to the competence of a defendant to knowingly and intelligently waive his constitutional rights by pleading guilty. The defendant must be found to possess that degree of competence "  .  .  . which enables him to make decisions of very serious import." *Sieling,* supra, at 215.

## FACTUAL BACKGROUND

The record in this case chronologically reveals the following:

On January 16, 1973, petitioner was examined by a Dr. Meyer and found competent to stand trial.

· On or about February 20, 1973, while incarcerated in the Maricopa County Jail, petitioner exhibited behavior sufficiently bizarre to warrant his transfer to a state hospital.

In a report dated February 27, 1973, a Dr. Duisberg found the petitioner suffering from a mental illness but "prone to exaggerate its intensity." Dr. Duisberg also noted the "opinion of the staff that the patient is feigning".

The next day, February 28, petitioner was examined by Dr. Bendheim. The doctor found petitioner suffering from a mental illness, possibly a "prison psychosis", unable to assist in his own defense and not competent to stand trial. This doctor also noted the possibility of malingering.

One month later, on March 28, a Dr. Ruland examined petitioner and found that he had "in great measure reconstituted" from the "psychiotic (sic) episode." Petitioner was further described as having a "mild to moderate degree of impairment of his ability to reason", but it was also noted "this impairment is lessening". Dr. Ruland concluded that petitioner would be competent to stand trial "in the near future".

The last evaluation made of petitioner was by a Dr. Baker on June 4. Dr. Baker reported that petitioner had been "clear and logical in his thinking" since April 5. He was suffering no delusions or hallucinations and had returned to his "previous pattern of cooperation." The report concluded that petitioner suffered no mental illness or defect, was competent to stand trial and accepted the necessity for legal disposition of the charges against him.

On June 13, the question of petitioner's competency to stand trial was submitted to the court on the above enumerated psychiatric reports. Petitioner was found compe-

172

tent to stand trial and to assist in his defense.

At the end of July, petitioner pled guilty to a felony charge pursuant to a plea agreement. By that same agreement six other felony counts pending against petitioner were dismissed.

The transcript of the change of plea hearing shows that petitioner was lucid, affirmed his understanding of the nature and consequences of his plea and provided the court with a factual basis for the plea.

## APPLICABLE LAW

In *Makal v. Arizona*, 544 F.2d 1030 (9th Cir. 1976), the Court stressed the fact that petitioner there had made a good bargain. While *Makal* is factually distinguishable from the instant case in other ways, it must be observed that petitioner here also made a very good bargain. Six serious felony charges were dismissed in exchange for his plea of guilty to one. The Arizona Court of Appeals opined that petitioner "would have been insane to refuse the agreement offered." (*Arizona v. Byrd*, 22 Ariz.App. 375, 527 P.2d 777, Op. Filed Nov. 6, 1974). This Court finds, at least, that the alternative selected by petitioner was not unintelligent or unreasoned within the rule of competency. See *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 165, 27 L.Ed.2d 162 (1970).

No hearing was had nor finding made on the question of competency at the time petitioner entered his plea as required by *Sieling*. The Ninth Circuit has approved a variety of remedies in this situation. In *Sieling*, the issue was remanded to the trial court for determination; in *deKaplany v. Enomoto*, 540 F.2d 975 (9th Cir. 1976) a retroactive determination was made by the District Court following an evidentiary hearing; and in *Makal v. Arizona*, 544 F.2d 1030 (9th Cir. 1976), the District Court made a determination based on the record.

This Court adopts the approach approved in *Makal*. While the two cases, as noted earlier are distinguishable, the Court is of the opinion that this case is also suited to disposition on the record.

In summary, the record here shows that petitioner began his incarceration competent to stand trial. (Meyer report of 1/16/73). He subsequently suffered a "psychotic break" and displayed very bizarre symptoms. The series of psychiatric evaluations following that episode show a steady improvement and eventual recovery. There is evidence that some of petitioner's apparent illness may have been the product of conscious exaggerations or outright fakery. Following the reported recovery petitioner appeared before the Court to enter his plea and was lucid and cooperative. The bargain he struck was to his distinct advantage.

In these circumstances the Court finds that petitioner was fully competent to enter a guilty plea under the standard set by *Sieling* and therefore it is

ORDERED that the petition for writ of habeas corpus is denied.