526 P.2d 396

**The STATE of Arizona, Appellee,**

v.

**Willie James ROBINSON, Appellant.**

**No. 2610.**

Supreme Court of Arizona, In Banc.

Sept. 20, 1974.

Gary K. Nelson, Former Atty. Gen., N. Warner Lee, Atty. Gen., by Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant Willie James Robinson from a judgment of guilty to the crime of assault with intent to commit robbery which was entered pursuant to a guilty plea.

We are asked to consider only one question on appeal and that is whether there was an adequate determination that the defendant was competent at the time to enter a plea of guilty.

The facts necessary for a determination of the issue before us are as follows. On 14 November 1971 the defendant Robinson was charged by criminal complaint with the crime of armed robbery. On 9 December 1971 defendant moved for a mental examination as provided in § 13–1621 A.R.S. Doctors Bindelglas and Wellish examined the defendant and agreed that his competency to stand trial was questionable. Both recommended hospitalization for further examination. A hearing was held, and on the basis of the reports of the two psychiatrists, the court, on 3 January 1972, found the defendant incompetent to stand trial and the defendant was committed to the Arizona State Hospital.

On 24 March 1972 the Superintendent of the Arizona State Hospital reported to the court that the defendant's competency was restored. The report was supported by written statements of Mrs. Muriel Wittleder, psychiatric social worker, and Dr. Michael F. Cleary, psychiatrist. Dr. Cleary stated:

"DIAGNOSIS: Drug dependence, opium, opium alkaloids and their derivatives, 304.0. Personality disorder, antisocial personality, 301.7.

"The defendant, or patient, Willie Robinson, is not suffering from a mental illness or defect.

"He is able to understand the nature of legal proceedings and can assist in his own defense.

"One diagnosis applicable to him is that of sociopathic personality disorder.

"His ability to reason and to control his conduct is not substantially impaired.

"He does have a potential for violent, dangerous behavior.

"His present mental condition does not justify his commitment to a mental institution.

"RECOMMENDATION. It is recommended that the patient, or defendant, Willie Robinson, be returned to court for disposition of charges against him."

And Mrs. Wittleder stated:

"COURSE IN THE HOSPITAL. On the surface, patient has been compliant during his stay in the Hospital, but he has, from the beginning, aligned himself with the more troublesome element, and has assumed a role of encouraging others toward active involvement, occasionally assuming a more active role. At the same time, he functioned as coordinator with the work crew, where he also demonstrated organizational abilities, but in a constructive way. He also participated meaningfully in group therapy, indicating his ability to think and express himself in a most satisfactory manner. He is in good contact, thinks clearly and logically, understands the pending charges against him, although he denies them, and he is able to assist in his own defense.

"RECOMMENDATION: It is recommended that Willie James Robinson be returned to the custody of Maricopa

County for disposition of charges now pending against him."

A hearing was held on 6 April 1972. Upon stipulation of counsel the matter was submitted without oral testimony on the report of the Superintendent of the State Hospital, and the defendant was on that date declared competent to stand trial. Preliminary hearing was waived, and the defendant bound over to the Superior Court. On 17 May 1972 a hearing was held on change of plea. The defendant agreed to plead guilty to the lesser charge of assault with intent to commit robbery. At the hearing the following transpired:

"THE COURT: Your true name is Willie James Robinson?

"THE DEFENDANT: Yes.

"THE COURT: And this assault with an intent to commit robbery is punishable by not less than one nor more than 14 years in prison. Are you aware of that?

"THE DEFENDANT: Yes.

"THE COURT: Has anybody threatened or coerced you in any way to enter a plea of guilty?

"THE DEFENDANT: No.

"THE COURT: Are you doing it of your own free will?

"THE DEFENDANT: Yes.

"THE COURT: It alleges on or about the 12th day of November, 1971, that you assaulted Robert Williams with intent to rob him; is that true?

"THE DEFENDANT: Yes.

"THE COURT: Where did it happen?

"THE DEFENDANT: On McDowell.

"THE COURT: What time of day was it, daytime or nighttime?

"THE DEFENDANT: I guess it was at night.

"THE COURT: Did you have a weapon or a gun?

"THE DEFENDANT: No.

"THE COURT: How did you assault him?

"THE DEFENDANT: Did I have a weapon?

"THE COURT: Yes.

"MR. BUEHLER: He is asking if you had a weapon, if you had a gun or a knife. The charge you are pleading guilty to is assault with an intent to commit robbery, namely this guy in the Information, Robert Williams. He wants to know what you did. Tell him you didn't have a gun if you didn't; tell him what you did.

"THE COURT: What happened?

"THE DEFENDANT: I don't know what happened. I had nothing. I didn't have no gun. I don't know what happened.

"THE COURT: You don't know?

"THE DEFENDANT: No.

"THE COURT: You don't remember?

"THE DEFENDANT: No. I don't know nothing about it.

"THE COURT: Why are you pleading guilty?

"THE DEFENDANT: I'm going to court. They told me—they told me I can get a lesser charge.

"THE COURT: It's a lesser charge. You were charged with robbery, which carries 10 to life. You are now charged with assault with intent to commit robbery. It carries one to 14.

Is that why you are pleading guilty, because it's a lesser charge?

"THE DEFENDANT: I guess so. I didn't have no gun.

"MR. BUEHLER: It appears, Your Honor, it's going to be—we're going to be unable to enter a plea at this time.

"THE COURT: The Court will not accept a plea at this time. You will have to confer with the prosecutor and your client."

Another hearing was scheduled for 17 June 1972. On that latter date the plea

was accepted and the defendant was thereafter sentenced to serve from 10 to 14 years in the Arizona State Prison.

The defendant first urges that the hearing on restoration of his competency was insufficient. He further argues that in any event, under Sieling v. Eyman, 9 Cir., 478 F.2d 211 (1973), a determination of competency to plead guilty requires a more searching examination of defendant's mental state than does a determination of competency to stand trial.

The procedure to be followed once a defendant's competency to stand trial has been brought into question is outlined in § 13–1621 A.R.S. A hearing to determine competency is required in the first instance under § 13–1621(E) A.R.S. If the defendant is found to be incompetent and is then committed to an authorized institution, § 13–1621(H)(2) A.R.S., another hearing on restoration of his competency must be held before he may be tried. § 13–1621(H) A.R.S.; State v. Williams, 110 Ariz. 104, 515 P.2d 849 (1973); State v. Blazak, 105 Ariz. 216, 462 P.2d 84 (1969).

Section 13–1621(H) A.R.S. provides as follows:

"4. After receiving a report pursuant to paragraph 3 of this subsection, or upon request by the defendant, certified by a psychiatrist, the court shall conduct another hearing to determine whether the defendant is able to understand the proceedings against him and to assist in his own defense."

The court's minute entry reads as follows: "Counsel submit the matter on the Report of the Supt. of the Arizona State Hospital.

"This matter having been submitted on the report of the Supt. of the Arizona State Hospital without further evidence, on the basis of the report of the Supt. of the Arizona State Hospital the Court finds that the defendant is now able to understand the proceedings against him and to assist in his defense."

The parties may waive a hearing and submit the matter on the reports as was done here. State v. Lopez, 110 Ariz. 198, 516 P.2d 571 (1973).

The defendant complains that the report of the Superintendent of the State Hospital was inadequate for a determination of competency. That report consisted of a form report signed by the Superintendent, together with the reports of Mrs. Wittleder, the social worker, and Dr. Michael Cleary, the psychiatrist. Defendant suggests that the minute entry would indicate that the court considered only the form report, and ignored the reports of the social worker and the psychiatrist. We feel that is a rather strained reading of the minute entry. The filing dates on the form report and the accompanying reports of the social worker and the psychiatrist indicate that all were filed together. We can only interpret the court's reference to the "report of the Superintendent" to mean the form report plus the attached written reports of the social worker and the psychiatrist. The entire report was sufficient for a determination of competency, and we hold that the trial court properly found that the defendant was competent to stand trial.

We then come to the second prong of the defendant's argument that even if competency to stand trial was established, defendant's competency to plead guilty was never established.

In State v. Hostler, 109 Ariz. 212, 507 P.2d 974 (1973) this court stated:

"* * * The defendant's competency to stand trial and assist in his defense had been established; hence, his competency for the purpose of entering a guilty plea was also established. * * *" 109 Ariz. at 215, 507 P.2d at 977.

However, one month after our decision in Hostler, supra, the United States Court of Appeals for the Ninth Circuit held that competency to stand trial is not the equivalent of competency to plead guilty and

thereby waive constitutional rights. The court wrote:

"We think *Westbrook* makes it plain that where a defendant's competency has been put in issue the trial court must look further than to the usual 'objective' criteria in determining the adequacy of a constitutional waiver. * * * While the Court did not suggest a standard, it is reasonable to conclude from the Court's language that the degree of competency required to waive a constitutional right is that degree which enables him to make decisions of very serious import. Judge Hufstedler, in Schoeller v. Dunbar, 423 F.2d 1183, 1194 (9th Cir. 1970) has suggested the following standard: 'A defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a *reasoned choice* among the alternatives presented to him and to understand the nature of the consequences of his plea.' We think this formulation is the appropriate one, for it requires a court to assess a defendant's competency with specific reference to the gravity of the decisions with which the defendant is faced [footnote omitted]." Sieling v. Eyman, supra, 478 F.2d at 214–215. (Emphasis added)

In State v. Decello, 111 Ariz. 46, 523 P. 2d 74, 1974, we considered Sieling, supra, and Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) in relation to a defendant who was found competent to stand trial and who contended that an additional finding of competency to waive the right to a jury trial should also have been made. In rejecting Decello's contention we stated:

"A defendant who waives the assistance of counsel in a criminal trial is by that very act doing something that calls into question his rationality, and the United States Supreme Court has indicated that greater care must be taken in allowing a person to waive his right to an attorney than it does in finding him competent to stand trial. Westbrook, supra. We do not believe, however, that the United States Supreme Court in Westbrook, supra, mandates that a defendant who is represented by counsel and is competent to stand trial must be given, absent other facts, a further hearing by the court as to his competency to waive his right to a jury.

"The right to a jury trial is admittedly a precious constitutional right, but its waiver is more often than not a question of trial strategy in which the subjective evaluations of the attorney for the defendant play a more important role than the discretion of the defendant. Unlike the waiver of assistance of counsel or plea of guilty, the waiver of a jury may well be in the defendant's best interests." 111 Ariz. 46, at 49, 523 P.2d 74, at 76–77.

In Decello, supra, we distinguished Sieling, supra, as follows:

"We believe that the facts in the Sieling case may be distinguished from the facts in the instant case. In Sieling, supra, there was a definite conflict in the psychiatrists' testimony which not only put the defendant's sanity 'in issue,' but raised a 'substantial question' as to his mental capacity. In the instant case, even though psychiatrists were appointed and the defendant was sent to the hospital for evaluation, the reports were in agreement as to defendant's mental capacity. Admittedly, the trial court did not specifically direct its findings to defendant's specific competency to waive his constitutional right to a jury. We believe, however, that the record before us is able to support such a finding on appeal and we so find." 111 Ariz. at 49, 523 P.2d at 77.

In the instant case there was a "substantial question" as to defendant's mental capacity and defendant's sanity was "in issue." For these reasons we believe that the trial court was required to determine

whether the defendant was competent to plead guilty in addition to the finding that he was competent to stand trial. Westbrook and Sieling, supra.

Upon issuance of the mandate in this matter, it is ordered that the matter is remanded to the Superior Court of Maricopa County for a hearing, within 60 days, to determine, if possible, whether defendant was competent to enter a knowing, intelligent, and voluntary plea of guilty. The finding of the court together with the reporter's transcript of said hearing shall then be promptly transmitted to this court for further consideration.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.