561 P.2d 1231
**The STATE of Arizona, Appellee,**

v.

**Earl Davis WAGNER, Appellant.**

**No. 3406.**

Supreme Court of Arizona,
In Division.

March 15, 1977.

**460**

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III and Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Derickson, Kemper & Henze, by James Hamilton Kemper, Phoenix, for appellant.

CAMERON, Chief Justice.

On 29 March 1962, Earl Davis Wagner pleaded guilty to first degree murder, kidnapping, assault with intent to commit murder, and three counts of robbery. He was sentenced to two terms of life imprisonment and four terms of not less than 10 years nor more than 20 years at the Arizona State Prison. The sentencing court apparently intended the sentences to run consecutively. The defendant did not appeal from this conviction and sentence.

Almost fourteen years later, on 3 October 1975, the defendant petitioned for post-conviction relief to the Maricopa County Superior Court under Rule 32 of the Arizona Rules of Criminal Procedure, 17 A.R.S. The court appointed counsel for the defendant, and counsel filed an amended petition. By order dated 5 January 1976, the Superior Court granted the defendant permission to file this delayed appeal. We accepted jurisdiction pursuant to A.R.S. § 13–1711 and § 12–120.21(A)(1).

The sole issue on appeal is whether the record before this court establishes that the defendant was competent to enter pleas of guilty to the crimes charged.

Unfortunately, in determining this issue, we are hampered by the fact that the record on appeal is incomplete. Such record as we have indicates the following.

On 25 August 1961, Wagner picked up an elderly woman who wanted a ride to her son's house. He drove her into the desert near Phoenix where he stabbed her to death.

A month later, Wagner pulled up behind a truck parked off 19th Avenue in Phoenix. Three men and a woman occupied the truck. He held up the men at gunpoint. He forced the woman into his truck and drove her to the site of a church building under construction. There he beat her, allegedly raped her, slashed her throat and wrists and stabbed her repeatedly. He left her for dead but she survived. Wagner was arrested the next day and later charged by information with the various crimes.

On 6 November 1961, counsel for Wagner petitioned for a mental examination of Wagner under the then applicable Rule 250, Arizona Rules of Criminal Procedure. Attached to the petition were the affidavits of Roxie Wagner, the defendant's aunt and adoptive mother; Jake Wagner, his adoptive father; and an affidavit by defense counsel himself.

On the basis of the affidavits, the Superior Court, on 4 December 1961, granted the petition and appointed two psychiatrists to examine Wagner as to his competency to stand trial. The date for the competency hearing was set for 20 December 1961.

On 20 December 1961, the psychiatrists' reports were filed with the court. Both reports are in the record on appeal. Dr. James M. Kilgore described the defendant's history and then stated:

"It is my diagnostic impression that Mr. Earl Davis Wagner is suffering from a serious mental illness which I would diagnose as a schizophrenic reaction. It is my further impression that while Mr. Wagner is not at present overtly psychotic, that at the time of the murder of one woman and brutal attack upon another he was in a psychotic state. I feel that this man should be considered criminally insane and that he not only needs protection from his own violent impulses but also society should be protected against

further uncontrolled outbursts of violence secondary to his mental illness.

*"It is my opinion that Mr. Wagner is able at this time to understand the proceedings against him and to assist in his own defense inasmuch as at present I do not feel that he is overtly psychotic. However, as indicated above, I feel that Mr. Wagner is suffering from a serious mental illness and that his crimes are related to this."* (Emphasis supplied)

Dr. Carl Breitner observed, as did Dr. Kilgore, that the defendant was cooperative during the interview. His report noted:

"On the surface it might appear that the boy, with a history of anti-social actions throughout his adolescence and adult life, would have to be classified as a sociopathic personality, anti-social reaction. This makes him fully responsible in the eyes of the law. However, because of the recurrent reports of spells during which he did not seem to know what he was doing, his compulsive running away and his peculiar behavior, which at times approaches the behavior seen in psychomotor epilepsy, make a more serious mental disorder possible. During the examination itself the inappropriate laughter and a certain vagueness and shallowness of behavior and emotional response makes one think of a possible schizophrenic reaction. *It is quite obvious that during the examination the patient knew the difference between right and wrong, understood the proceedings and was able to assist his attorney but he is truly subject to 'spells' on whatever basis, functional or organic.*

"One must recognize the possibility that at times he may lose his contact with reality and act out in an uncontrollable fashion which would render him irresponsible.

"While as the result of the history and examination one can classify this individual only as suffering from a Personality Pattern Disturbance, Passive Aggressive Personality, further studies could reveal truly psychotic dynamisms.

"It is therefore recommended the patient have psychological projective testing and also possibly electroencephalographic studies to determine whether he is suffering from a disorder, possibly psychotic in nature, which might render him temporarily not responsible within the concept of the McNaughten (sic) Rule.

"The rage reactions, which constitute the main problem in this case, might be avoided in the future by subjecting this man to a prefrontal lobotomy to which he would probably agree." (Emphasis added)

The record we have indicates that by minute entry the date for hearing on Wagner's competency to stand trial was set for 20 December 1961 and then continued to 3 January 1962. There is nothing in the record to indicate that the hearing was held or the result if one was held.

On 5 January 1962, the record indicates that counsel for the defendant filed notice that Wagner would enter an insanity defense at the trial for the murder charge. In response, the prosecutor requested an examination into Wagner's mental condition. The court granted the motion and appointed two psychiatrists to examine the defendant. Their reports do not appear in the record on appeal. One month later, on 26 February 1962, counsel for defendant filed a motion for an electroencephalogram examination of Wagner, which motion was granted. The record is silent as to whether the examination was ever conducted and the results thereof.

Seven days before trial, on 20 March 1962, Wagner attacked a fellow inmate with a razor blade at the county jail. On the same day his counsel filed a motion for a thirty day continuance of the trial date. An attached affidavit recited in part that

"* * * in the opinion of the Maricopa County Deputies assigned to the Jail, Vargas and Millward, the defendant did not know what he was doing, nor did he know that he had cut himself; that he was glassy eyed, acted wildly, and attempted to bite the deputies who restrained him; that the defendant has now been removed by the Sheriff of Mar-

icopa County to the Detention Ward of the Maricopa County Hospital for precautionary measures * * .*."

The motion contained a request that the defendant be hospitalized at the Arizona State Hospital for observation during the period pending trial. The court reset the trial date to 11 April 1962. The record does not disclose whether the defendant was hospitalized.

The last notations in the record are several minute entries dated 29 March, nine days after the incident at the jail. These minute entries summarily recite that the defendant had withdrawn his pleas of not guilty by reason of insanity and had entered a plea of guilty to all charges filed against him, with the exception of the rape charge to which he pleaded not guilty. He was sentenced 18 April 1962. The rape charge was later dismissed because Wagner had been sentenced to life imprisonment.

■ The conviction of an accused who is mentally incompetent violates due process. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). In *Pate v. Robinson*, supra, the defendant was convicted of murdering his common law wife. The issue before the Supreme Court was whether *Robinson* had been constitutionally entitled to a hearing on his competence to stand trial under the Illinois competency statute in effect at the time of his trial in 1959. The statute required the trial judge to conduct a hearing on his own motion where the evidence raised a "bona fide" doubt as to the defendant's competence. The Illinois state courts had held that the evidence was not sufficient to require a hearing in light of Robinson's orderly demeanor at trial and the stipulated opinion of a psychiatrist that *Robinson* knew the nature of the charges against him and could cooperate with counsel. But the Supreme Court held that the "uncontradicted testimony of Robinson's history of pronounced irrational behavior," in conjunction with his prior confinement as a psychopathic patient, his killing of his infant son, his attempted suicide, and the testimony of four witnesses that he was insane, raised a sufficient doubt as to his competence so that he was deprived of due process of law under the Fourteenth Amendment by the trial court's failure to afford him a hearing on that issue.

In the instant case, the reports of the two psychiatrists were in agreement that the defendant was competent to stand trial. Were this the only issue raised, we would have no difficulty in holding that the two reports on this matter support a finding that the defendant was, in fact, competent to stand trial.

We have, however, an additional factor of concern. The defendant's conduct in jail certainly raised a substantial question as to not only his competency to stand trial at that time, but his competency to enter a plea of guilty. The record indicates that the incident was brought to the attention of the trial court, but the record is silent as to whether a hearing was held to determine if the defendant was competent to proceed further or to enter a plea of guilty.

■ A person may be competent to stand trial and still not be competent to waive his basic constitutional rights to that trial. *State v. Decello*, 111 Ariz. 46, 523 P.2d 74 (1974). When there is sufficient evidence to believe that a defendant who has been found competent to stand trial is not competent to waive his right to that trial by a plea of guilty, the trial court is required to make further inquiry to determine whether the defendant is making a rational and reasoned decision in entering the plea of guilty:

"In the instant case there was a 'substantial question' as to defendant's mental capacity and defendant's sanity was 'in issue.' For these reasons we believe that the trial court was required to determine whether the defendant was competent to plead guilty in addition to the finding that he was competent to stand trial.

(citations omitted)" *State v. Robinson,* 111 Ariz. 153, 157-58, 526 P.2d 396, 400-01 (1974); *State v. Contreras,* 112 Ariz. 358, 542 P.2d 17 (1975). See Note, Competency to Waive Constitutional Rights: A New Criterion, 17 Ariz.L.Rev. 729 (1975).

■ The record indicates that there was sufficient doubt of defendant's competency to enter a plea of guilty. The record is silent whether the trial court did, in fact, determine defendant's competency to enter his plea. Unless the record is expanded to show that the defendant was competent to enter his plea of guilty, the judgment of guilt cannot stand. We need not, however, reverse at this time.

■ While there is no presumption of a waiver, a basic constitutional right, from a silent record, in the instant case there is a possibility that the trial judge not only found that the defendant was competent to stand trial but also found that he was competent to enter a plea of guilty. We believe that the matter can be remanded to the trial court for a hearing to determine:

1. if the court did, in fact, find that the defendant was competent to enter his plea of guilty, and

2. if this cannot be determined, if the defendant was, in fact, competent to enter said plea.

■ As to the second direction, we are aware that in *Pate v. Robinson,* supra, the United States Supreme Court held that, six years after trial in which there was no hearing conducted, the matter could not be cured by remand for an evidentiary hearing. However, the Ninth Circuit in *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973), has stated:

"As to the proper form of relief, we think a remand to the state court may be adequate to resolve the question of Sieling's competency to plead guilty. The Supreme Court in *Pate v. Robinson* (citation omitted) faced a problem of determining a defendant's competency some six years

after the defendant was tried. There the Court concluded that a retrospective determination of the defendant's competency could not satisfactorily be made because inter alia, 'expert witnesses would have to testify solely from information contained in the printed record.' (citation omitted) That was so, because the trial court had never inquired into the competency question, and thus medical experts have never examined Robinson at the time of the trial. Therefore, the only proper course was a new trial. Here, however, Sieling was examined within a month before his plea by three medical experts, each of whom submitted reports and testified before the trial court. The scope of their examinations and the content of the opinions they expressed may be sufficient for the trial court to determine whether or not their opinions can support a finding that Sieling was competent to plead guilty as well as to stand trial. (footnote omitted) * * *" 478 F.2d at 215.

In the instant case, the two reports submitted to determine defendant's competency to stand trial are available. The other psychiatric reports may be available and the psychiatrists who actually examined the defendant could testify.

The trial court shall conduct a hearing, make findings of fact and file same together with a reporter's transcript of the proceedings in this court within 90 days of the issuance of the mandate of this court in the instant case.

STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.