704 P.2d 1355

The STATE of Arizona, Appellee,

v.

Lawrence Allen CAMERON, Appellant.

Nos. 2 CA–CR 3446, 2 CA–CR 3447–2.

Court of Appeals of Arizona,
Division 2, Department A.

May 1, 1985.

Review Denied Aug. 20, 1985.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III and Greg A. McCarthy, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

BIRDSALL, Presiding Judge.

Following a Rule 11[1] examination to determine his competency, appellant was found competent to stand trial on four counts of aggravated assault, one count each of attempted burglary, burglary, kidnapping, theft, resisting arrest, and criminal damage. Appellant waived his right to a jury trial and raised an insanity defense. He was found guilty on all counts, two of the convictions were held to be priors to the others, and he was sentenced to four ten-year terms, one eight-year term, three three-year terms, one 2.5-year term, and one 1.875-year term, all aggravated. Three of the ten-year terms were applied consecutively, the rest were all concurrent to one or another of the ten-year terms.

Appellant's issues on appeal are as follows: 1) the trial judge erred in not making a separate finding of his competency to waive his constitutional right to a jury trial; 2) the court erroneously admitted statements appellant made during his Rule 11 evaluation; 3) the trial judge erred in rejecting appellant's insanity defense because his insanity was established by clear and convincing evidence and the state failed to prove his sanity beyond a reasonable doubt; and 4) appellant's consecutive sentences are excessive under the circumstances.

Prior to trial, defense counsel moved for a mental examination to determine both appellant's competence to stand trial and his mental condition at the time of the incidents with which he was charged. A psychologist, Dr. Hinton, filed a report concluding that appellant was competent to stand trial, but his ability to distinguish right and wrong and his appreciation of the nature and consequence of his acts were questionable, and that a formal Rule 11 proceeding was needed. The court granted appellant's Rule 11 motion and appointed two psychiatrists. Both psychiatrists found appellant competent to stand trial, one later testified that in his opinion appellant was *M'Naghten* insane at the time of at least one of the incidents; the other testified that appellant was not *M'Naghten* insane. The psychologist also testified at trial that in his opinion appellant was *M'Naghten* insane.

Following the determination of appellant's competence to stand trial, the parties agreed to waive a jury trial, and at a hearing, following questioning of appellant by the trial judge, the judge approved of the waiver of the jury. The defense of insanity had been raised and much of the actual trial consisted of testimony as to appellant's sanity at the time of the incidents. In addition to the testimony of the two psychiatrists and the psychologist, other testimony concerned a diagnosis of paranoid schizophrenia made at Kino Hospital upon admission following an episode of psychotic behavior in the Pima County Jail while appellant was awaiting trial. The court also learned that appellant's parent suffered from a severe mental illness, and that appellant had undergone previous psychiatric hospitalization in New York.

■ Appellant now argues that it was not sufficient that the trial judge make a finding that appellant's waiver of the jury

---

1. Rule 11, Rules of Criminal Procedure, 17 A.R.S.

trial was made knowingly, it was also necessary that the judge make a competency determination of his ability to waive a constitutional right. We have analyzed a succession of cases dealing with the law in Arizona concerning competency to waive jury trial and we conclude that appellant is correct, it was error not to make a specific on-the-record finding of his competency to waive the jury trial.

Our examination begins with *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). There the Supreme Court found a distinction between a defendant's mental competence to stand trial, and competence to waive his right to counsel at trial. In light of its decision in the same term in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Court, in a per curiam decision, remanded *Westbrook* to the Arizona Supreme Court for further proceedings. *Pate* concerned the failure of a court to determine competency of a defendant to stand trial.

The Ninth Circuit Court of Appeals cited *Westbrook* in its decision in *Sieling v. Eyman*, 478 F.2d 211 (9th Cir.1973). *Sieling* concerned a situation similar to the one we consider today. Three mental health experts found the defendant *M'Naghten* insane at the time of the crime, yet two believed defendant was competent to stand trial. Before his trial began, Sieling entered a plea of guilty, no additional determination of his competency to enter the plea was made, and he was sentenced. The denial of his petition for habeas corpus by the United States District Court was appealed to the Ninth Circuit.

Quoting *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the court stated: "[i]t is of course well settled that a defendant in a criminal trial cannot be deemed to abandon any fundamental constitutional protection unless there is both 'an intelligent and competent waiver by the accused.'" 478 F.2d at 214. The *Sieling* court then went on to state,

"We think *Westbrook* makes it plain that, where a defendant's competency has been put in issue, the trial court must look further than to the usual 'objective' criteria in determining the adequacy of a constitutional waiver.... It was not suggested [in *Westbrook*], nor has it been in this case, that the state court's determination that the accused was competent to stand trial was incorrect. The clear implication, then, is that such a determination is inadequate because it does not measure the defendant's capacity by a high enough standard. While the Court did not suggest a standard, it is reasonable to conclude from the Court's language that the degree of competency required to waive a constitutional right is that degree which enables him to make decisions of very serious import." 478 F.2d at 214–15.

Following the Ninth Circuit's decision in *Sieling*, the Arizona Supreme Court decided *State v. Decello*, 111 Ariz. 46, 523 P.2d 74 (1974). The court analyzed both *Westbrook* and *Sieling*, and found them to be controlling. However, the court stated,

"[T]he United States Supreme Court has indicated that greater care must be taken in allowing a person to waive his right to an attorney than it does in finding him competent to stand trial. Westbrook, supra. We do not believe, however, that the United States Supreme Court in Westbrook, supra, mandates that a defendant who is represented by counsel and is competent to stand trial must be given, *absent other facts*, a further hearing by the court as to his competency to waive his right to a jury." 111 Ariz. at 48–49, 523 P.2d at 76–77 (emphasis added.)

Subsequently, the court distinguished the *Sieling* holding,

"We believe that the facts in the Sieling case may be distinguished from the facts in the instant case. In Sieling, supra, there was a definite conflict in the psychiatrists' testimony which not only

put the defendant's sanity 'in issue,' but raised a 'substantial question' as to his mental capacity. In the instant case, even though psychiatrists were appointed and the defendant was sent to the hospital for evaluation, the reports were in agreement as to defendant's mental capacity." 111 Ariz. at 49, 523 P.2d at 77.

We cannot find that the three experts who testified at appellant's trial were in agreement as to his mental condition. It is clearly not sufficient that all found him competent to stand trial, *Westbrook*, supra, *Sieling*, supra. See also *State v. Wagner*, 114 Ariz. 459, 561 P.2d 1231 (1977).

The state urges that the record of the case reflects that appellant was competent to waive the jury. We decline to make such a finding. The questioning of appellant by the judge prior to the judge's acceptance of the waiver of the jury trial indicates that the appellant spoke no more than "Yes, sir," and "Yes, your Honor," in response to the questions posed by the court. The appellant did not testify at the trial. We do not believe that we should presume the judge determined from this that appellant's level of competence rose to the higher standard mandated by *Westbrook* and *Sieling* absent a specific finding. Nor do we agree that the medication which contributed to the appearance of competence to stand trial necessarily proved a competence to waive constitutional rights.

It is, however, not necessary to reverse the judgment of the court. We follow the analysis of our supreme court in *Wagner*, supra, that it is not necessary to reverse if the record can be expanded on remand to include a finding by the trial judge of the appellant's competence to waive a jury trial. In *Wagner*, our supreme court conceded that *Pate v. Robinson*, supra, held that no cure could be effected by a remand for an evidentiary hearing to determine the competency. Nevertheless, the court observed that the *Sieling* court had found that to be so because there had never been

*any* competency determination, nor mental health examination, made in *Pate*. In *Sieling*, as well as in *Wagner*, and in the instant case, more than one mental health expert filed reports which were in the record from which the trial judge may be able to make a determination of the higher standard of competency required to waive the right, that is, the standard propounded by the *Wagner* court, "whether the defendant is making a rational and reasoned decision" on a matter of very serious import.

We likewise follow the procedure of the supreme court in *Wagner;* the matter is remanded

> "to the trial court for a hearing to determine:
>
> 1. if the court did, in fact, find that the defendant was competent to [waive a jury trial], and
>
> 2. if this cannot be determined, if the defendant was, in fact, competent to [waive a jury trial].
>
> * * *
>
> The trial court shall conduct a hearing, make findings of fact and file same together with a reporter's transcript of the proceedings in this court within 90 days of the issuance of the mandate of this court in the instant case." 114 Ariz. at 463, 561 P.2d at 1235.

In the event that a finding of competency according to the announced standard is made, no further proceedings in the trial court need take place, and it is therefore necessary to consider appellant's other issues on appeal.

Appellant's primary argument is that the trial judge erred in applying the applicable statutory assignment of burden of proof of his insanity in rejecting his insanity defense. The record indicates that there was extensive discussion between the court and the appellant's counsel concerning the applicable dates of two different statutes. A.R.S. § 13–502 was amended by the 1983 legislature. The version before amendment said:

"A person is not responsible for criminal conduct if at the time of such conduct the person was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if such person did know, that such person did not know that what he was doing was wrong."

Our supreme court has held that a defendant could rebut the presumption of sanity by raising a reasonable doubt concerning his sanity. Once a reasonable doubt was raised, the burden of proof shifted to the state, which had to prove the defendant's sanity beyond a reasonable doubt. *State v. Coconino County Superior Court, Division II*, 139 Ariz. 422, 678 P.2d 1386 (1984), *State v. Berndt*, 138 Ariz. 41, 672 P.2d 1311 (1983).

The 1983 amendment raised the standard of the burden of proof the defendant must bear thusly:

"The defendant shall prove he is not responsible for criminal conduct by reason of insanity by clear and convincing evidence." A.R.S. § 13–502(B) (Supp. 1984).

■ Now there is no shift in the burden of proof, rebutting of the presumption of sanity by clear and convincing evidence of insanity is required, and there is therefore no requirement of proof of sanity beyond a reasonable doubt. See *State v. Coconino County*, supra.

■ Appellant's main problem is that the above-quoted amendment became effective July 27, 1983, and the actions for which he is charged span a period of time from July 24 through August 3, 1983, with one count occurring July 27. Therefore, the burden as to his sanity shifted as to the dates of the different counts. *State v. Coconino Co.*, supra. This information was conveyed to the trial judge, who indicated that he had studied the amendment and its effect, and that he had decided each count by the applicable standard. We believe the record demonstrates that this was done and there is evidence to support such findings.

■ Appellant cites as additional error a line of questioning concerning statements made to one of the psychiatrists by appellant concerning his knowledge of the offenses with which he was charged. Appellant had stated to Dr. Morenz that he was aware at the time of the interview with Morenz that what he had done was wrong. This statement was included in Dr. Morenz's Rule 11 examination report. Appellant's counsel moved in limine, prior to trial, to preclude admission into evidence of these remarks. No ruling was made on the motion because of the prosecutor's statement that he would not elicit the information in his examination.

On direct examination of Dr. Gurland, the other psychiatrist, appellant's counsel sought to have Dr. Gurland distinguish Dr. Morenz's examination which had not found insanity. On cross-examination, the state was apparently attempting to impeach Gurland's analysis of Morenz's diagnosis, and the cross-examination began:

"Q. Doctor, I think you indicated you were familiar with a report done by Dr. Morenz?

A. Yes, I had a chance to review it earlier either some time last week or the beginning of this week.

Q. Then you are aware that of course when Mr. Cameron talked to Dr. Morenz that he indicated he knew that what he did was wrong?"

The appellant's counsel's objection was overruled and the state was allowed to continue to inquire as to appellant's responses to Dr. Gurland and Dr. Morenz concerning his knowledge of the right- or wrong-ness of his actions.

This is the kind of evidence which Rule 11.7(b)(1), Rules of Criminal Procedure, 17 A.R.S., specifically excludes. Nor does the state assert that this testimony ought to have been allowed. We find that the objection was proper and that the question and the subsequent line of testimony were erroneously admitted. We find, though, that

the error was harmless for more than one reason.

First, when the trial judge is also the trier of fact, the judge often hears otherwise inadmissible evidence. This is more often true in civil trials, where juries are more frequently waived. Nevertheless, judges in criminal cases hear inadmissible evidence in suppression hearings and the like. Thus, our supreme court in *State v. Garcia*, 97 Ariz. 102, 397 P.2d 214 (1964) found harmless an error admitting evidence otherwise inadmissible when the criminal trial was to the judge, rather than to a jury.

Second, the statements of the appellant to the psychiatrist were a part of the Rule 11 report of the doctor to the judge and were therefore already before the judge and were presumably already known to him.

And finally, we cannot say that evidence as to the appellant's mental state at the time of the interview with the psychiatrist was so prejudicial as to confuse the judge. There was abundant testimony that persons undergoing a psychotic episode often recognize later the wrongness of what they did during the episode even though they are incapable of recognizing it at the time. Therefore, we find the error harmless and will not reverse. If it is found that appellant was not competent to waive a jury trial, and further proceedings are mandated beyond that finding, we presume such error will not recur.

 Appellant finally argues that the three consecutive ten-year sentences were excessive and that the judge failed to state his reasons for giving consecutive sentences. It is not necessary to restate the reason for giving consecutive sentences when the same reasons have adequately been given to explain why a sentence is aggravated. *State v. Lamb*, 142 Ariz. 463, 690 P.2d 764 (1984); *State v. Bishop*, 137 Ariz. 5, 667 P.2d 1331 (App.1983). The trial judge adequately stated his reasons in the record for giving an aggravated sentence, i.e., the multitude of dangerous felony offenses committed, the use of deadly weapons and dangerous instruments, the inflic-

tion of serious physical injury upon one victim, and the threatened use of deadly physical force against a peace officer. It is not necessary for these reasons to be repeated to order consecutive sentences.

 The trial court has broad discretion in sentencing. If a sentence is within statutory limits, it will not be modified or reduced unless, from the circumstances, it clearly appears that the sentence was an abuse of the trial court's discretion. *State v. Stotts*, 144 Ariz. 72, 695 P.2d 1110 (1985). While appellant's sentences were aggravated, they were not the top range of sentences available. Nor do we find any abuse of discretion in giving consecutive sentences. The sentences are affirmed.

Remanded for further proceedings consistent with this opinion. Upon the filing of the record in this court of the further proceedings in the trial court, if the court has found the appellant was competent to waive the jury trial, the judgment of convictions and sentences will be affirmed by supplemental opinion. If no such finding is made, the judgment will be reversed.

HOWARD and FERNANDEZ, JJ., concur.