766 P.2d 623

STATE of Arizona,
Appellee–Respondent,

v.

Richard Dean ROMERS,
Appellant–Petitioner.

Nos. 1 CA–CR 11249, 1 CA–CR 11463
and 1 CA–CR 12300–PR.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 20, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for the State.

Thomas E. Collins, Maricopa Co. Atty. by H. Allen Gerhardt, Deputy Co. Atty., Phoenix, for respondent.

Thomas A. Thinnes, P.A. by Martin Lieberman, Phoenix, for Richard Dean Romers.

## OPINION

JACOBSON, Judge.

Richard Dean Romers (defendant) appealed from judgment and sentencing following his plea of no contest to two counts of kidnapping, class 2 dangerous felonies, and two counts of aggravated assault, class 3 dangerous felonies, and from the trial court's denial of his motion to vacate that judgment. We consolidated these appeals with defendant's petition for review of the trial court's dismissal of his petition for post-conviction relief.

In his appeal, defendant claims the trial court erred in denying his motion to withdraw from his plea agreement, raising two issues:

(1) Did the trial court err in determining that defendant was competent to enter his plea of no contest?

(2) Did the trial court err in failing to find that the recantations of the state's main witness destroyed the factual basis for the plea?

In his petition for review, defendant raised an additional issue:

Did the trial court err in failing to afford defendant post-conviction relief based on newly discovered evidence?

Because we hold the trial court erred in determining that defendant was competent to enter his plea of no contest, and reverse on that basis, we do not reach the recantation issues raised on appeal and the issue raised in the petition for post-conviction relief.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 12, 1985, the state, by complaint, charged defendant with one count of first degree burglary, two counts of kidnapping, one count of armed robbery, all class 2 felonies, and four counts of aggravated assault, class 3 felonies, in connection with a crime that had occurred on November 21, 1985. The complaint was based on information supplied by Patrick Dondono, a suspect in an unrelated burglary. On January 29, 1986, the county attorney filed an information in superior court charging both defendant and Patrick Dondono with the enumerated offenses.

While defendant was incarcerated and awaiting trial, detention authorities observed that he was becoming increasingly despondent and depressed. They requested that he be seen by a psychiatrist from Correctional Health Services. On March 3, 1986, George O'Connor, M.D., examined defendant and prescribed a mild antidepressant.[1] On March 18, 1986, noting that the severity of defendant's illness had become more apparent, Dr. O'Connor prescribed antipsychotic medication. On March 28, 1986, he increased the dosage. He found defendant needed medication to "maintain some type of rational perspective about himself." On April 25, 1986, the doctor

---

1. Dr. O'Connor testified about defendant's course of treatment at a presentence hearing held on October 9, 1986.

was finally satisfied that defendant was stabilized.

On March 21, 1986, defendant filed a motion pursuant to Rule 11, Arizona Rules of Criminal Procedure, to determine whether he was competent to stand trial. The trial court ordered the Correctional Health Services medical staff to prepare a pres-creening report. Dr. O'Connor reported that reasonable grounds existed to warrant a Rule 11 evaluation, and on April 8, 1986, the trial court granted defendant's motion. The court appointed a psychiatrist and a psychologist to evaluate defendant's mental status. The examinations took place on April 29, 1986, and May 1, 1986. Although the doctors noted defendant had emotional problems and a clinically significant family history, they found he was competent to stand trial at that time.

Approximately three months later, on August 13, 1986, defendant's case proceeded to trial. Immediately after the jury had been empaneled, and prior to opening statements, defendant entered into a plea agreement in which he agreed to plead no contest to two counts of kidnapping and two counts of aggravated assault, all dangerous offenses. The agreement stipulated that defendant's sentence would not exceed fifteen years and that he would not be eligible for release until he had served two-thirds of the term. The state agreed to dismiss the other counts and not to file other charges for crimes in which defendant was a suspect. After the entry of the plea, the trial court ordered a presentence mental health examination pursuant to Rule 26.5, Arizona Rules of Criminal Procedure.

At a presentence hearing on October 9, 1986, defendant moved for a mental examination pursuant to Rule 11 to determine competency to be sentenced. Defendant's counsel had learned that, through administrative oversight, defendant's medications were terminated in May. Dr. O'Connor had not seen defendant from May 29 until October 21, 1986. No other psychiatrist saw defendant during that time. On October 2, defendant attempted suicide. He was admitted to the jail infirmary and examined by Dr. O'Connor, who reported defendant had lost twenty-one percent of his total body weight, appeared gaunt and severely depressed. Defendant manifested an endocrine abnormality that Dr. O'Connor felt was likely thyroid dsyfunction. Dr. O'Connor later theorized that defendant's physical and psychiatric ailments were exacerbated by his abrupt withdrawal from steroid use after his incarceration and the termination of his medication.

The trial court granted the Rule 11 motion and ordered Dr. O'Connor, Otto Bendheim, M.D., and Michael Bayless, Ph.D., to examine defendant to determine whether he was competent to be sentenced and whether he was competent at the time he entered into the plea agreement.[2]

On December 12, 1986, defendant moved to withdraw from his plea agreement based on the recantation of his co-defendant, Patrick Dondono. He claimed Dondono's testimony was the only evidence the state had to link him to the crime.

On December 17, 1986, defendant moved to supplement his motion to withdraw, claiming he was incompetent when he entered his plea on August 13, 1986. He submitted the motion based on Dr. O'Connor's December 15, 1986, report that stated defendant was psychotic in August and September 1986 and incompetent at the time he signed the plea agreement.

The trial court held an evidentiary hearing on January 26, 1987, to determine whether defendant was competent at the time he entered into the plea agreement.[3] The court had also received detailed written reports from Dr. O'Connor and the other two court-appointed doctors. The court subsequently denied defendant's motion to withdraw from his plea.

2. The court appointed a different psychiatrist and psychologist from the ones who had examined defendant previously to determine competency to stand trial.

3. The judge who decided this motion was not the same judge who had heard all previous motions, presided at the trial, and accepted defendant's plea.

On February 27, 1987, the trial court sentenced defendant to an aggravated term of fifteen years on each count, with all counts to run concurrently. Defendant timely appealed from his conviction and sentence.

On March 25, 1987, defendant filed a motion to vacate the judgment based upon newly discovered evidence. The trial court summarily denied the motion on April 16, 1987. Defendant timely sought review.

On July 21, 1987, defendant filed a petition for post-conviction relief. The trial court denied defendant's motion for rehearing and dismissed his petition for post-conviction relief. Defendant timely petitioned for review.

## DEFENDANT'S COMPETENCE TO PLEAD GUILTY

### A. The Necessity for Determining Incompetence.

■ If competence is at issue, the trial court must determine whether defendant's "mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea." *State v. Sims,* 118 Ariz. 210, 215, 575 P.2d 1236, 1241 (1978) (quoting *Sieling v. Eyman,* 478 F.2d 211, 215 (9th Cir.1973)).

Neither the state nor the trial court disputes that defendant manifested psychiatric problems shortly after his incarceration. The record is replete with references to these problems from the early motion for an examination to determine competency pursuant to Rule 11 to the trial court's acknowledgment that defendant had problems when he ordered a Rule 26.5 mental examination after defendant entered his plea. The mere presence of emotional problems does not, of course, mean that defendant was incompetent to plead. In this case, because the court and defendant's attorney were unaware that defendant's psychiatric treatment and medication had been terminated at the time he entered his plea, it was necessary to make a determination of competency based upon retrospective evaluation. The psychiatrist's and psychologist's reports, together with the transcript of the colloquy at the change of plea hearing, provided the basis on which the trial court denied defendant's motion to withdraw his plea when he determined that defendant was competent to enter the plea.

### B. Withdrawal of a Plea Based on Incompetence.

#### 1. The burden of proof

Rule 17.5, Arizona Rules of Criminal Procedure, governs the withdrawal of pleas and states that "[t]he court, in its discretion, may allow withdrawal of a plea of guilty or no contest when necessary to correct a manifest injustice." Permitting or denying withdrawal is within the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion. *See State v. Anderson,* 147 Ariz. 346, 351, 710 P.2d 456, 461 (1985).

■ Defendant claims that once the issue of his competency is properly raised, the state bears the burden of proving by a preponderance of the evidence that he was competent to plead. This general rule regarding competence, however, does not apply when the issue of competency is raised in a motion to withdraw a plea of no contest. When a defendant moves to withdraw from a plea, the burden is upon the defendant to show adequate grounds for permitting withdrawal of his plea. *See State v. Chavez,* 130 Ariz. 438, 636 P.2d 1220 (1981). The burden does not change merely because the ground for withdrawal is the competency of the defendant. This holding is not only consistent with case law but also with the 1983 amendment to A.R.S. § 13–502(B), which requires a defendant to prove he is not responsible for criminal conduct by reason of insanity. *See* A.R.S. § 13–502(B). We thus must determine whether defendant presented evidence to sustain his burden to permit withdrawal from his plea agreement.

#### 2. The evidentiary hearing

##### a. The doctors' testimony

Three doctors testified at the evidentiary hearing. Dr. O'Connor was the only treating doctor who testified, having been in-

volved in defendant's medical treatment at the onset of his problems in jail, at the resumption of treatment after the suicide attempt, and at the time he moved to withdraw his plea. Dr. O'Connor unequivocally stated in his written report that defendant was psychotic and incompetent at the time he entered into the plea agreement. His testimony confirmed this assessment.

The other psychiatrist, Dr. Bendheim, testified that he could not be sure that defendant was incompetent when he entered the plea agreement. He stated he believed "there [was] a strong possibility that he was not competent at that time." When asked if he could determine whether defendant was competent, he responded, "No, I could not make either statement. I think the possibility—I would almost be inclined to say probability of incompetence —of not being competent is great here." In his written report, Dr. Bendheim stated:

... during his incarceration, there have been periods of confusion and amnesia, possibly with unfavorable drug reactions, certainly also associated with severe episodes of depression. It is my opinion that it is possible, although I cannot be certain, that at the time, the defendant signed certain plea bargaining agreements, he may not have been totally aware of the consequences and there may have been difficulty in understanding exactly what he was doing.

In his written report Dr. Bayless stated he felt defendant entered the plea agreement "under duress" because of "[his] emotional instability, the fact he was not under medication at the time, as well as, the pressure he was experiencing." At the hearing he clarified that the duress was not of an ordinary type a defendant would experience when brought to trial. In discussing the ramifications of steroid withdrawal, the doctor stated:

... we have an individual who has a biochemical dysfunction. The level of depression and the ability to actually make competent decisions at that time would be secondary to organic dysfunction more so than secondary to emotional stress. I think that it could be far more

severe when you have the biochemical dysfunction because it's a thing that you're out of control ... you cannot rely upon your resources, your defenses don't react adequately.

The trial judge considered the written reports and testimony and stated in his order denying defendant's motion to withdraw his plea:

Because of an administrative mixup within Correctional Health Service the defendant was transferred from Dr. O'Connor's care and left untreated or medicated until late September, 1986, when the treatment and medication resumed. The testimony by Dr. O'Connor indicates that the defendant could reasonably have still been under the effect of medications at the time of the plea.

The trial court's finding is erroneous. Although Dr. Bayless stated it was possible that the steroids defendant had taken prior to incarceration could conceivably remain in his system for "some time," Dr. O'Connor stated on two occasions that it was *not* possible for defendant to be receiving any beneficial effect from the antipsychotic medications when he had not taken them since at least nine weeks before he pled guilty.

The trial court continued:

The testimony of Dr. O'Connor when retrospective opinions were sought concerning the defendant's condition at the time of the plea on August 13, 1986, was far too speculative to be reliable or relied upon and consequently is not.

The testimony of the other medical experts was also too speculative or without sufficient "Concreteness" in the opinions expressed on the defendant's mental state at the time of his plea to be reliable and consequently also are not relied upon.

Psychiatric evidence is by its very nature speculative, whether the analysis is retrospective or contemporaneous. The fact that the evidence is given in the form of an "opinion" should not preclude a finding of incompetence, especially where no other evidence seriously impinges upon that opinion. Here, three doctors testified. One

found defendant incompetent, the second cast his opinion in terms of severe biochemical dysfunction, and the third stated that the possibility of defendant not being competent was "great." The medical evidence strongly favored the defendant's position and other factors considered by the trial court do not diminish its import.

### b. *The trial court's reliance on the change of plea colloquy*

In this case, the trial court used the plea colloquy to bolster the finding of competency. Relying on *State v. Cameron*, 146 Ariz. 210, 704 P.2d 1355 (App.1985), defendant contends the trial court erred in doing so. In *Cameron*, the appellate court declined to find defendant competent to waive a jury based on the colloquy in which the defendant merely answered "yes" or "no" to questions posed by the trial court, absent a specific finding by the trial court. *Id.* at 213, 704 P.2d at 1358. In this case, the trial court made a specific finding and stated that it had considered the "pleadings, caselaw presented, plea agreement and interview transcripts, various psychiatric and psychological reports ... testimony adduced at the evidentiary hearing, arguments of counsel and ... representations included in the departmental reports." The court then stated:

> A reading of the plea proceedings very clearly and crisply indicates the voluntary, willing, knowing taking of a plea with an able assist by competent counsel.

> The defendant responded intelligently and coherently to complex concepts put to him by the Court as the plea was taken.

During the colloquy, defendant stated he understood what a no contest plea was and understood that he could benefit by the plea bargain. He stated, "At least I will come out someday."

■ We hold that it is appropriate for the trial court to consider the change of plea colloquy along with other factors when determining if there are grounds for withdrawal from a plea agreement. We find, however, the trial court's conclusion as to the probative value of the colloquy regarding defendant's competency is not sustainable. In our opinion, the exchange did not rise to the level of intelligent and coherent responses to complex concepts nor should such responses preclude a finding of incompetence based on a diagnosis of severe depression.

### c. *Counseled plea*

■ The state, relying on *State v. Pierce*, 116 Ariz. 435, 569 P.2d 865 (App. 1977), argues that defendant's counseled entry of his plea was a representation on the part of defense counsel that, in his opinion, defendant was competent and capable of entering an intelligent plea. The state's reliance on *Pierce* is misplaced. In *Pierce*, after a Rule 11 examination, the court found defendant competent to stand trial. Five days later defendant entered a guilty plea to the charge. Although the court found that an offer by defendant's counsel of a guilty plea "should logically constitute a representation ... [that] the client is competent and capable of entering an intelligent plea," the court held that the record did not establish that defendant demonstrated the ability to make a reasoned choice among alternatives and remanded the case for a hearing to determine competence. *Id.* at 439, 569 P.2d at 869. In the present case, defense counsel became aware of the lapse in defendant's psychiatric treatment and medication only after Dr. O'Connor contacted him, subsequent to defendant's plea. The attorney obviously relied heavily on the doctor's evaluation as he moved to withdraw the plea only after he saw Dr. O'Connor's written report indicating that defendant was incompetent. We hold that the entry of a counseled plea is not dispositive of a defendant's competence to enter an intelligent plea; rather, the court should only consider the presence of counsel as a factor in its determination. *See* Rule 17, Arizona Rules of Criminal Procedure; *State v. DeCello*, 111 Ariz. 46, 523 P.2d 74 (1974).

## CONCLUSION

The doctors' written reports and their testimony do not support a finding of com-

petency, nor does the change of plea colloquy unequivocally support that conclusion. In fact, the opposite is true. We find defendant has met his burden of proving that grounds to withdraw from the plea existed. We therefore hold that the trial court erred in denying defendant's motion to withdraw from his plea agreement. We remand to the trial court to allow defendant to withdraw the plea. Upon withdrawal, the charges against the defendant as they existed before any amendment, reduction, or dismissal made as part of the plea agreement, shall be reinstated automatically. *See* Rule 17.5, Arizona Rules of Criminal Procedure.

In view of this disposition, we deny review of the petition for post-conviction relief.

REVERSED AND REMANDED.

FIDEL, P.J., and EUBANK, J., concur.