**Gary Wayne HARKINS, Appellant,**

v.

**Donald W. WYRICK, Warden, Missouri State Penitentiary, and Harry Lauf, Records Officer, Missouri State Penitentiary, Appellees.**

No. 78–1533.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 20, 1978.

Decided Jan. 10, 1979.

Howard Eisberg of Wells, Eisberg, Slough & Connealy, Kansas City, Mo., for appellant.

John D. Ashcroft, Atty. Gen., and Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before GIBSON, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

Gary Wayne Harkins is in the custody of the Missouri Department of Corrections pursuant to a twenty-five-year sentence rendered upon his plea of guilty in State court to robbery charges. He appeals from the District Court's [1] denial of his petition for writ of habeas corpus, alleging that Missouri authorities have wrongfully denied him credit for thirty-one months spent in federal custody in violation of due process and equal protection as guaranteed by the fourteenth amendment and the eighth amendment's prohibition against cruel and unusual punishment.

The facts are not disputed. On September 3, 1968, Harkins was arrested in Poplar Bluff, Missouri, on suspicion of committing armed robbery of the Puxico State Bank. The next morning he was released on bond. In February 1969, federal authorities arrested Harkins for the robbery of a bank in Tennessee. While in federal custody, Harkins was confined either in Memphis, Tennessee, or the United States Medical Center for federal prisoners at Springfield, Missouri. The Circuit Court of Butler County, Missouri, issued a writ of habeas corpus ad prosequendum pursuant to which United States marshals returned Harkins to Poplar Bluff, Missouri, where, on March 28, 1969,

he entered a plea of guilty to the pending State robbery charges and was sentenced. Immediately after imposition of the sentence, United States marshals took Harkins to Memphis, Tennessee, for further proceedings in the United States District Court for the Western District of Tennessee. Following hearings concerning his mental competency to stand trial, that court committed him pursuant to 18 U.S.C. § 4246 [2] to the United States Medical Center for federal prisoners until he should be mentally competent to stand trial or until the charges pending against him should otherwise be disposed. On September 16, 1969, Missouri authorities lodged with the Medical Center a detainer against Harkins. Harkins remained at the Medical Center as a result of his commitment until the criminal charges pending in the United States District Court for the Western District of Tennessee were dismissed.[3] Thereafter, he was immediately released to Missouri authorities pursuant to the previously filed detainer and the Missouri Department of Corrections received him on October 19, 1971.

When State officials refused to subtract the thirty-one months spent in federal custody from the twenty-five-year sentence, Harkins filed in the Circuit Court of Cole County, Missouri, a petition for declaratory judgment. The court in essence denied the petition, ruling that the twenty-five-year State sentence did not begin to run until Harkins was received at the Missouri State Penitentiary on the day he was released from federal custody. The Missouri Supreme Court, *en banc*, affirmed this ruling. *Harkins v. Lauf*, 532 S.W.2d 459 (Mo.1976). On February 19, 1976, Harkins filed a peti-

1. The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri.

2. 18 U.S.C. § 4246 provides:
   *Procedure upon finding of mental incompetency*
   Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the ac-

cused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided.

3. Harkins remained at the Medical Center from August 1, 1969, to October 19, 1971.

tion for writ of habeas corpus in the United States District Court for the Western District of Missouri. The District Court denied the petition and this court granted Harkins's application for a certificate of probable cause to appeal.

### I.

Appellees argue that Harkins's petition should be dismissed because he has failed to exhaust his State remedies as required by 28 U.S.C. § 2254(b) and (c).[4] A writ of federal habeas corpus is not available unless the petitioner has presented the State courts with an opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. *Picard v. Connor,* 404 U.S. 270, 272, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). As stated by the United States Supreme Court in *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971), "The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights. *Fay v. Noia,* 372 U.S. 391, 438 [83 S.Ct. 822, 848, 9 L.Ed.2d 837] (1963)."

Appellees claim that Harkins never raised any constitutional issues in the declaratory judgment action in State court but relied exclusively upon a theory of statutory construction of Mo.Rev.Stat. § 546.-615. The record, however, reveals that the argument in Harkins's *pro se* "Petition for Declaratory Relief or Writ of Mandamus" explicitly alleges that the failure of the records keeper at the State penitentiary to grant credit for the time spent in federal custody was "in violation of State Law and the Constitutional Mandate dealing with due process and equal protection of the laws

in both Missouri and United States Constitutions." After a hearing at which Harkins appeared unrepresented by counsel, the Cole County, Missouri, Circuit Court denied the petition for declaratory judgment. Although the public defender represented Harkins in the appeal to the Missouri Supreme Court and his brief placed principal reliance upon the plain language of the State statute, we find that Harkins properly presented the State courts with an opportunity to rule on the constitutional issues of due process and equal protection. The trial court was squarely presented with a due process and equal protection challenge. Furthermore, the dissenting opinion in the Missouri Supreme Court explicitly stated that the majority interpretation of the State statute constituted a violation of equal protection as applied to Harkins. *Harkins v. Lauf,* 532 S.W.2d 459, 474–75 (Mo.1976). (Bardgett, J., dissenting). Thus the circumstances of this case are clearly distinguishable from those in *Picard v. Connor, supra,* wherein the Supreme Court held that the petitioner had not fairly presented his equal protection challenge to the State courts. In *Picard* there was no indication of any allegations of discrimination in violation of equal protection in any of the pretrial, trial or appellate papers, and the fourteenth amendment was mentioned only with regard to whether due process would mandate that states comply with the fifth amendment requirement of a grand jury indictment, 404 U.S. at 274, 276–77, 92 S.Ct. 509, whereas Harkins's trial papers explicitly raised due process and equal protection arguments, and on appeal, the dissenting members of the State Supreme Court adopted his equal protection argument. Thus, Harkins provided the State courts with ample opportunity to review the appli-

4. 28 U.S.C. § 2254 provides in relevant part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstanc-

es rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

cation of the due process and equal protection clauses to the facts of his case.[5]

## II.

Harkins contends that due process requires giving him credit for the time spent in federal custody after the imposition of the State sentence. First, he argues that since the time spent in federal custody cannot be attributed to any other sentence, it must be credited toward his State sentence. To support this argument he relies upon cases involving the situation where the sentence of a second conviction is set to run consecutively to that of a prior conviction that is subsequently voided. *Johnson v. Henderson*, 455 F.2d 983 (5th Cir. 1972); *Meadows v. Blackwell*, 433 F.2d 1298 (5th Cir. 1970); *Goodwin v. Page*, 418 F.2d 867 (10th Cir. 1969).[6] These cases are clearly distinguishable. Harkins was not in federal custody pursuant to a void or voidable conviction; his confinement was not the result of any mistake. Instead, federal authorities retained custody of his person because of his questionable mental competency. The concept of fundamental fairness that requires the Government to remedy the injustice imposed upon a prisoner who could have been serving an existing sentence were he not detained on an invalid sentence does not apply to the situation of petitioner. The analysis of the United States Court of Appeals for the Ninth Circuit in addressing a claim for credit against a State sentence for time spent in a State mental institution awaiting trial is particularly apposite:

> * * * Makal was not in jail because he could not afford bail; nor was he in the hospital for reasons of indigency. The state hospital was established for the confinement, treatment, and rehabilitation of the mentally ill. Petitioner had been charged with a capital crime and for his own protection was hospitalized so that a trial, if it occurred at all, would take place only when he was mentally competent to participate and protect his own interests. He was not confined for purposes of punishment, and we cannot find that this stay at the hospital was a part of his punishment for the commission of a crime. Thus, there was no custody related to his guilt for which he need be given credit unless for some reason the state provided for it in its own system.

*Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).

Petitioner also argues that the Missouri Supreme Court violated due process by interpreting the State crediting statute, Mo.Rev.Stat. § 546.615, in a manner contrary to its plain language. This argument indicates a misperception of the role of the federal courts in examining habeas corpus petitions of State prisoners. As stated in *Israel v. Odom*, 521 F.2d 1370, 1376 (7th Cir. 1975), "Interpretation of state statutory law is manifestly not a proper function of this court under its habeas corpus jurisdiction. *United States ex rel. Little v. Twomey*, 477 F.2d 767, 770 (7th Cir. 1973), *cert. denied*, 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94." A federal court may not simply reinterpret State statutes. To do so would impermissibly invade the autonomy and independence of the States. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This court is bound by the determination of the Missouri Supreme Court as to the meaning and application of a Missouri statute.

## III.

Harkins challenges the constitutionality of the State crediting statute, Mo.Rev.

---

**5.** Petitioner's argument that the failure to credit him with the time spent in federal custody constitutes cruel and unusual punishment because it shocks the conscience does not appear to have been raised in the State courts. However, the argument is clearly frivolous as the sentence was well within the permissible range of punishment and his confinement at the mental hospital was not a part of any confinement for the commission of a crime.

**6.** Harkins also relies upon *United States v. Croft*, 450 F.2d 1094 (6th Cir. 1971), claiming that it "is based on the same federal principles that require relief in the instant case." *Croft*, however, did not involve due process or any other federal constitutional theory and the decision to give credit for time served merely effectuated the intentions of the sentencing courts.

Stat. § 546.615, alleging that it provides disparate treatment without a rational basis in violation of the equal protection clause of the fourteenth amendment. Essentially, Harkins argues that the requirements for crediting a State sentence with time spent in State custody related to the conviction resulting in the sentence should be the same as those for crediting a State sentence with time spent in federal custody pursuant to totally unrelated charges with a separate purpose unrelated to guilt or punishment. We disagree. The equal protection clause does not prohibit treating different classes of persons differently. *See Salsburg v. Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954); *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). A prisoner seeking credit on a State sentence for time spent in State custody related to that sentence is not similarly situated to petitioner.[7]

■ Harkins also claims that he has been unfairly discriminated against on the basis of his mental condition. He argues that if he had been released on bail from federal custody, he could have started serving his State sentence immediately upon its imposition. His mental condition, however, precluded him from the opportunity to make bail.[8] This situation is distinguishable from when the failure to post bond is due to lack of finances. *See United States v. Gaines*, 449 F.2d 143 (2nd Cir. 1971.) Harkins was not required to serve a longer sentence on the basis of his poverty; he was confined in a mental hospital for evaluation and rehabilitative purposes. The failure to grant him credit for the time spent in custody while committed for mental illness did not

violate his right to equal protection of the law. *See Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).

### IV.

Petitioner has failed to demonstrate any federal constitutional basis that would require granting him credit on his State sentence for the time he spent in federal custody. Since no federally protected rights have been interfered with, the penalty for violation of a State statute is purely a matter of State concern.

Judgment affirmed.

---

7. Petitioner also cites *Umphenour v. State*, 535 S.W.2d 579 (Mo.App.1976), in support of his equal protection argument. The court in *Umphenour*, however, explicitly distinguished *Harkins v. Lauf*, 532 S.W.2d 459 (Mo.1976). It noted that while generally it would adhere to the rule of disallowance of jail time on an unrelated charge, the sentencing jurisdiction had participated in Umphenour's incarceration in another jurisdiction on unrelated charges by virtue of a detainer that was the reason he chose not to make bond. 535 S.W.2d at 581–82. Thus, it found that the incarceration was

related to the sentence on which he sought credit. Since Harkins was not bailable, the State detainer could not have the effect of relating the federal custody to the State conviction.

8. Harkins was not bailable on the federal charges because of his successive commitments to the Federal Medical Center, first to determine his competency to stand trial under 18 U.S.C. § 4244, and later because he was found to be incompetent under 18 U.S.C. § 4246.