**STATE of Utah, Plaintiff and Appellee,**

**v.**

**David Leslie FIFE, Defendant and Appellant.**

**No. 950256–CA.**

Court of Appeals of Utah.

Feb. 8, 1996.

Joan C. Watt, David V. Finlayson, and Roger K. Scowcroft, Salt Lake City, for Appellant.

Jan Graham, James H. Beadles, and James M. Cope, Salt Lake City, for Appellee.

Before BENCH, BILLINGS, and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant David Leslie Fife appeals the trial court's refusal to give him credit for time spent in the Utah State Hospital pending a determination that he was competent to stand trial. We affirm.

## BACKGROUND

In 1992, defendant was charged, by information, with forcible sexual abuse, a second degree felony, in violation of Utah Code Ann. § 76–5–404 (1995). Defendant's attorney filed a petition to inquire into defendant's competency to proceed to trial, pursuant to Utah Code Ann. § 77–15–3 (1995). The trial court found defendant to be incompetent to stand trial and ordered him committed to the State Hospital. Defendant was in and out of jail and the State Hospital over the next two years, as the trial court continued to investigate his competency. He was in the State Hospital, pursuant to the trial court's commitment order, for a total of 257 days.

Eventually, the trial court found defendant to be competent, at which time defendant withdrew his original plea of not guilty and entered a guilty plea to attempted forcible sexual abuse, a third degree felony. As a condition of the plea, the State agreed that defendant would be sentenced on a Class A misdemeanor, pursuant to Utah Code Ann. § 76–3–402 (1995).[1] The trial court sentenced defendant to one year in the Salt Lake County Jail, the maximum sentence for a Class A misdemeanor. However, the trial court suspended the sentence and placed defendant on probation. When defendant later violated the terms of his probation, the trial court revoked his probation and ordered defendant to serve the one-year sentence.

Upon imposition of defendant's sentence, the trial court gave him credit for the 265 days he had spent in the Salt Lake County Jail, but refused credit for the 257 days defendant spent in the State Hospital, ordering him to serve the 100 day balance of the one-year sentence. Defendant completed his sentence on June 9, 1995.

Defendant appeals, claiming the trial court violated his constitutional rights by refusing to give him credit on his jail sentence for the time he had spent in the State Hospital pursuant to the trial court's commitment order. Both defendant and the State request that we address this issue despite its technical mootness as to defendant.

---

1. Under section 76–3–402, the trial court has discretion to "enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly" if certain factors are present. Utah Code Ann. § 76–3–402(1) (1995).

## STANDARDS OF REVIEW

■ Whether an appellate court "reach[es] the merits of a mooted issue in any particular case rests within [the court's] discretion." *Reynolds v. Reynolds,* 788 P.2d 1044, 1046 (Utah App.1990); *see also McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974). Whether credit must be granted for time spent in the State Hospital as ordered by the trial court, pending a determination of competency, is an issue of law, which we review for correctness. *See State v. Martinez,* 896 P.2d 38, 39–40 (Utah App.1995).

## MOOTNESS

■ Because defendant completed his sentence in the Salt Lake County Jail, the "requested judicial relief cannot affect the rights of the litigant[ ]," and the issue before this court is technically moot. *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989). Therefore, we must decide if this case presents an issue that meets the exception to the general rule that appellate courts "refrain from adjudicating issues when the underlying case is moot." *Id.; see also Wickham v. Fisher,* 629 P.2d 896, 900 (Utah 1981); *Reynolds,* 788 P.2d at 1045. The exception to the general rule occurs when three elements have been met: (1) the case presents an issue that affects the public interest; (2) the issue is likely to recur; and (3) because of the brief time that any one litigant is affected, the issue is capable of evading review. *Wickham,* 629 P.2d at 899; *Burkett,* 773 P.2d at 44.

■ Both parties agree that the issues involved in this case, while technically moot as to defendant, satisfy the three elements described above and that the case thus falls within the exception to the general rule. We concur and therefore address the primary issue presented.

## CREDIT FOR PERIOD OF CONFINEMENT IN STATE HOSPITAL

Defendant was confined in the State Hospital for an inquiry into his competency to stand trial pursuant to section 77–15–3 of the Utah Code, which provides:

> Whenever a person charged with a public offense or serving a sentence of imprisonment is or becomes incompetent to proceed, as defined in this chapter, a petition may be filed in the district court of the county where the charge is pending or where the person is confined.

Utah Code Ann. § 77–15–3(1) (1995).[2] After examination and a hearing, the trial court found defendant incompetent to stand trial and ordered him committed to the custody of the Department of Human Services for evaluation and treatment to restore his competency. *See* Utah Code Ann. §§ 77–15–5, –6 (1995). As a result of that commitment order, defendant spent a total of 257 days in the State Hospital.

Defendant claims on appeal that the trial court violated his equal protection, due process, and double jeopardy rights under the United States Constitution by refusing to grant him credit for the time he spent in the State Hospital after he was found incompetent to stand trial.

### Equal Protection

■ First, we address defendant's equal protection challenge. The Utah Supreme Court has noted that both the Utah and Federal constitutions "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984). Accordingly, the threshold determination is whether defendant was treated differently from others who are similarly situated.

Defendant argues that he was treated differently from other, similarly situated criminal defendants, because he was "confined ... longer than a similarly situated criminal defendant who was not found incompetent" and "an inequality exists as to the maximum

---

**2.** Defendant's competency was originally investigated in 1992. Minor modifications were made to the relevant statutes in 1994, none of which change the analysis in this case. Accordingly, we cite to the most recent versions of the statutes.

amount of time which can be served by competent and incompetent defendants under the same circumstances."

On this point, defendant argues that the reasoning of *State v. Richards,* 740 P.2d 1314 (Utah 1987), is controlling. In *Richards,* an indigent criminal defendant was held in jail prior to trial due to his inability to post bail. *Id.* at 1315. At sentencing, the trial court refused to give credit for the time spent in jail. *Id.* The Utah Supreme Court held that "[f]ailure to grant credit against a maximum sentence for presentence incarceration imposed because of a defendant's inability to post bail violates the Equal Protection Clause of the Fourteenth Amendment." *Id.* Defendant argues that he must be granted credit for the time spent in the State Hospital because, like the defendant in *Richards,* he was detained by court order prior to trial.[3]

However, *Richards* is explicitly limited to the disparate treatment of criminal defendants on the basis of their *economic* status. *Id.* at 1317 ("We limit our holding to the proposition that the Equal Protection Clause requires that credit against any sentence must be given for all presentence incarceration imposed on a defendant because he or she cannot post bail."); *see also State v. Alvillar,* 748 P.2d 207, 210 (Utah App.1988) (recognizing that *Richards* was "specifically limited ... to situations where the defendant was unable to post bail and therefore had to remain incarcerated because of 'economic status.'"). Accordingly, *Richards* is limited to prohibiting the classification of criminal defendants on the basis of their economic status. *Id.* at 210 (noting that the *Richards* court "rejected the proposition that credit should be given for presentence incarceration in all cases."). It does not compel the result defendant desires in this case.

In order to establish a violation of the guarantee of equal protection, a party must convince us that the law has been applied differently to identified classes of people "without a reasonably related legitimate government purpose." *Amax Magnesium Corp. v. Tax Comm'n,* 796 P.2d 1256, 1261 (1990).[4] In this case, defendant argues that the law impermissibly grants credit for time served to criminal defendants detained in jail or prison because they could not post bail, and denies credit for time spent in a mental health institution pending a finding of competency.

This precise issue was addressed in *Harkins v. Wyrick,* 589 F.2d 387 (8th Cir.1979). In *Harkins,* a federal court committed the defendant to a medical center pending the return of competency. *Id.* at 389. Subsequently, state authorities obtained custody of the defendant and he entered a guilty plea to robbery. *Id.* At sentencing, the state court refused to give him credit for the time spent in the medical center pending the return of competency, and the defendant appealed. *Id.* at 389–90. The Eighth Circuit rejected the defendant's claim that denial of credit for time spent in the medical center pending a return to competency violated his equal protection rights, reasoning that the disparate treatment was appropriate because of the defendant's mental status, and that he was differently situated from criminal defendants who could not make bail due to their economic status. The court reasoned as follows:

> The equal protection clause does not prohibit treating different classes of persons differently. ....
>
> ... [Defendant] argues that if he had been released on bail from federal custody, he could have started serving his State sentence immediately upon its imposition.

**3.** Defendant cites *Reanier v. Smith,* 83 Wash.2d 342, 517 P.2d 949 (1974) (en banc), for the proposition that criminal defendants who are detained pending a return of competency are similarly situated as those detained because of financial inability. We are not convinced that *Reanier* stands for this proposition. Although one of the criminal defendants in *Reanier* was held in a state hospital, nowhere in the case is there any indication that he was held pending a determination of competency. In fact, the defendant appeared in court to enter a guilty plea,

whereupon he returned to the hospital, suggesting that he was competent and that his time in the hospital was for another purpose, not to await the return of competency. *Id.,* 517 P.2d at 949–50.

**4.** Although *Amax* was decided under the Utah Constitution's equal protection provision, the court noted the same principles and concepts are embodied in the federal equal protection clause. *Amax,* 796 P.2d at 1261.

His mental condition, however, precluded him from the opportunity to make bail. *This situation is distinguishable from when the failure to post bond is due to lack of finances.* [Defendant] was not required to serve a longer sentence on the basis of his poverty; he was confined in a mental hospital for evaluation and rehabilitative purposes. The failure to grant him credit for the time spent in custody while committed for mental illness *did not violate his right to equal protection of the law.*

*Id.* at 392 (emphasis added) (citations omitted). Other courts have reached similar results. *Makal v. Arizona,* 544 F.2d 1030, 1035 (9th Cir.1976), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977) (finding "[t]here is no constitutional infirmity in reasonable classifications and in treatment of different classifications differently" in course of denying credit for time served in state hospital due to mental illness);[5] *Dorfman v. State,* 351 So.2d 954, 957 (Fla.1977) (Amstead, J., concurring) ("There is an obvious difference ... between confinement in a prison ... as part of a criminal sentence, and a period of treatment in a mental hospital...."), *superceded by statute as stated in State v. Tal–Mason,* 492 So.2d 1179, 1180–81 (Fla.App.1986); *Dalton v. State,* 362 So.2d 457, 458 (Fla.App.1978) (following *Dorfman* ).

We similarly conclude that classification of criminal defendants on the basis of their mental competency is reasonably related to a legitimate governmental purpose of treating and restoring to competency such persons. Accordingly, defendant's equal protection challenge fails.

### Due Process

■ Defendant further contends that the trial court's ruling denying him credit for the time spent at the State Hospital violated his due process rights under the Fourteenth Amendment of the U.S. Constitution. Specifically, defendant relies upon *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In *Jackson,* the trial court found the defendant incompetent and committed him to a mental hospital pending a return of his sanity. *Id.* at 719, 92 S.Ct. at 1848. However, because the trial record indicated that it was unlikely that the defendant would ever regain his sanity, the Supreme Court noted that the commitment was tantamount to a sentence of life imprisonment. *Id.* at 725–26, 92 S.Ct. at 1851–52. Under these circumstances, the Supreme Court found the procedure followed by the State of Indiana violated both equal protection and due process guarantees under the federal constitution. *Id.* at 730, 738, 92 S.Ct. at 1854, 1858. In the course of reaching this decision, the Supreme Court made the following statement, upon which defendant relies:

At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial *cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.* If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

*Id.* at 738, 92 S.Ct. at 1858 (emphasis added).

However, as defendant concedes, the Utah Legislature has taken steps to insure that

---

**5.** The *Makal* court noted that:
[defendant] was not in jail because he could not afford bail; nor was he in the hospital for reasons of indigency. The state hospital was established for the confinement, treatment, and rehabilitation of the mentally ill. Petitioner had been charged with a capital crime and for his own protection was hospitalized so that a trial, if it occurred at all, would take place only when he was mentally competent to participate and protect his own interests. He was not confined for purposes of punishment, and we cannot find that his stay at the hospital was a part of his punishment for the commission of a crime. Thus, there was no custody related to his guilt for which he needed to be given credit....
*Makal,* 544 F.2d at 1035.

the situation faced by the defendant in *Jackson* cannot occur. Utah law provides:

> In no event may the maximum period of detention under this section exceed the maximum period of incarceration which the defendant could receive if he were convicted of the charged offense.

Utah Code Ann. § 77–15–6(13) (1995).[6] Accordingly, in Utah, no criminal defendant can be held pending a determination of competency for longer than the "reasonable period of time" discussed in *Jackson*. Specifically, no criminal defendant may be held longer than the length of time equal to the sentence he or she would face upon conviction of the charged offense.[7] We find this procedural safeguard sufficient to meet the fairness requirements of due process as discussed in *Jackson*. See *De Angelas v. Plaut*, 503 F.Supp. 775, 782 (D.Conn.1980) (finding pretrial confinement of "eighteen months or a period equivalent to the maximum authorized sentence for the offense charged" for purposes of restoring competency is not "unreasonable period" of confinement); *In re Cueto*, 443 F.Supp. 857, 861 (S.D.N.Y.1978) (holding *Jackson* inapplicable to situation where "termination point" for detainment existed and there was therefore "no possibility" of long term, indeterminate confinement); *cf. People v. Saffell*, 25 Cal.3d 223, 157 Cal.Rptr. 897, 899, 903, 599 P.2d 92, 93–94, 97–98 (1979) (en banc) (holding commitment of criminal defendant who was mentally disordered sex offender for "the longest term of imprisonment which could have been imposed for the offense ... of which the defendant was convicted" did not violate equal protection guarantees). Accordingly, because existing safeguards insure that criminal defendants cannot be held for an indefinite period pending a determination of competency, defendant's due process challenge fails.

## Double Jeopardy

█ Finally, we address defendant's double jeopardy challenge. Defendant relies upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), to support his argument. In *Pearce*, the Court held "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a *new* conviction for the *same* offense." *Id.* at 718–19, 89 S.Ct. at 2077 (emphasis added). *Pearce* is readily distinguishable from defendant's situation because it involved credit for time served *after* the defendant was convicted, the time was served in a penal institution, and the time served was as a result of a sentence imposed as punishment for the crime. *Id.* at 713, 89 S.Ct. at 2074. The other cases defendant relies upon are also distinguishable on similar grounds, and no case involved pretrial detention for the purpose of mental evaluation or rehabilitation. *Durkin v. Davis*, 538 F.2d 1037, 1038–39 (4th Cir.1976) (defendant held due to inability to make bail); *Culp v. Bounds*, 325 F.Supp. 416, 418 (W.D.N.C. 1971) (defendant held in jail); *State v. Wietholter*, 130 Ariz. 323, 324, 636 P.2d 101, 102 (1981) (en banc) (defendant held as a condition of probation); *State v. Cook*, 37 Wash. App. 269, 679 P.2d 413, 414 (1984) (defendant held because she was threat to community).

As the Supreme Court has noted, double jeopardy "protects against multiple punishments for the same offense." *Pearce*, 395 U.S. at 717, 89 S.Ct. at 2076. However, double jeopardy applies only to time served as punishment for a crime. As we stated in dicta in *Rawlings v. Holden*, 869 P.2d 958 (Utah App.1994), "time served in a secured

6. Section 77–15–6(13) was added as an amendment to the statute in 1994, effective after defendant was charged but prior to sentencing. We note, however, that the length of defendant's confinement in the State Hospital did not exceed that allowed under the amendment. The maximum possible sentence for the charged offense of forcible sexual abuse, a second degree felony, is fifteen years. Utah Code Ann. § 76–3–203(2) (1995).

7. The application of the statute does not, however, "preclude pursuing involuntary civil commitment nor does it place any time limit on civil commitments." Utah Code Ann. § 77–15–6(13) (1995). The civil commitment process has its own procedural requirements, which are not at issue here. *See* Utah Code Ann. §§ 62A–12–231 to –252 (1993 & Supp.1995).

treatment program as a condition of probation ... is not equivalent to time served in prison as punishment for committing a crime." *Id.* at 961. Similarly, time spent in the State Hospital pending the return of competency is not the equivalent of time spent incarcerated as punishment for a crime after conviction. Other jurisdictions have reached similar conclusions, rejecting double jeopardy challenges to the denial of credit for time spent during mental treatment or examination. *Makal,* 544 F.2d at 1035 (noting in course of denying defendant's equal protection challenge "we cannot find that [defendant's] stay at the hospital was a part of his punishment for the commission of a crime."); *People v. Superior Court,* 233 Cal.App.3d 477, 284 Cal.Rptr. 601, 606 (1991) (rejecting double jeopardy challenge and noting that "commitment of a defendant to a state hospital after a[n] ... insanity determination is in lieu of criminal punishment and is for the purpose of treatment, not punishment."); *Pennington v. State,* 398 So.2d 815, 817 (Fla. 1981) (refusing to extend double jeopardy protection of *North Carolina v. Pearce* to rehabilitative confinement, noting "state hospitals are not jails."); *State v. Gilligan,* 24 Or.App. 483, 546 P.2d 783, 785 (1976) (finding no violation of double jeopardy principles where credit denied for time spent in mental institution prior to return of competency); *Milewski v. State,* 74 Wis.2d 681, 248 N.W.2d 70, 74 (1976) (rejecting defendant's double jeopardy challenge where defendant was committed for mental examination because, in part, "such a commitment is not a criminal sentence."). Accordingly, defendant's double jeopardy challenge must fail.

## CONCLUSION

Although the issue before the court is technically moot, we nonetheless address it because it affects the public interest, is likely to recur, and may not otherwise be reviewed. Defendant's equal protection challenge fails because he is not similarly situated to those criminal defendants who are given credit for time served in pretrial detention and the disparate treatment under the law is rationally related to legitimate state purposes. Defendant's due process challenge fails because Utah law insures that a criminal defendant in his position cannot be detained for longer than the maximum sentence for the charged offense. Finally, defendant's double jeopardy challenge fails because time spent in an institution for an evaluation of competency is not equivalent to time served as punishment for the offense. We therefore affirm.

BENCH and BILLINGS, JJ., concur.