2003 UT App 398

David Ernest MONTOYA, Petitioner
and Appellant,

v.

M.R. SIBBETT, Don Blanchard, Curtis Garner, Cheryl Hansen, and Keith Hamilton, members of Utah Board of Pardons and Parole in their official capacities; and Utah Board of Pardons and Parole, Respondents and Appellees.

No. 20030381–CA.

Court of Appeals of Utah.

Nov. 21, 2003.

Carolyn Pence, DeRae Preston, Robert B. Denton, and John Pace, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Sharel S. Reber, Asst. Atty. Gen., Salt Lake City, for Appellees.

Before BILLINGS, Associate P.J., BENCH and THORNE, Jr., JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 David Montoya appeals the trial court's denial of his Petition for Extraordinary Relief and grant of the Board of Pardons's (the Board) Cross Motion for Summary Judgment. Montoya asserts the district court erred in concluding the Board did not err in denying Montoya credit for time served at the Utah State Hospital (the state hospital). We reverse and remand and order Montoya be given credit for the 267 days he spent at the state hospital.

## BACKGROUND

¶ 2 On December 12, 1988, Montoya was convicted of attempted rape, a second degree felony, and sentenced to the Utah State Prison (the prison) for an indeterminate term of not less than one year and not more than fifteen years. Montoya's sentence was originally set to expire on or before December 11, 2003.

¶ 3 In early 1992, Montoya filed a petition for mental incompetency proceedings under Utah Code Annotated section 77–15–3 (1992),[1] which resulted in court-ordered mental evaluation reports pursuant to Utah Code Annotated section 77–15–5(2) and (3) (1992).[2] On April 21, 1992, the court found that, based on those mental evaluation reports, Montoya was "incompetent to understand the nature of the punishment he is serving .... [in that] he is suffering from a mental disease or defect resulting in his [in]ability to comprehend the nature of the punishment specified for the offense charged." Thus, pursuant to Utah Code Annotated section 77–15–6 (1994), the court ordered Montoya committed to the

---

1. This statute provides in relevant part:
   (1) Whenever a person who is charged with a public offense, *or who is serving a sentence of imprisonment, is or becomes incompetent* as defined in this chapter, a petition may be filed in the district court of the county where the charge is pending or where the person is confined.
   Utah Code Ann. § 77–15–3 (1992) (emphasis added).

2. These subsections provide:
   (2) Prior to the hearing, the court may order the Department of Human Services to examine the person and to report to the court concerning his mental condition.
   (3) Upon completion of the evaluation or examination under Subsection (2), a written report shall be submitted to the court setting forth the opinion of the department or the person or agency directed by the department to conduct the examination, as to the mental condition of the person. The report shall state the facts relied on as the basis for the opinion and shall be made available to the prosecuting and defense attorneys.
   Utah Code Ann. § 77–15–5(2) to (3) (1992).

state hospital with "[c]redit for time served to be determined by the Board of Pardons."

¶ 4 On January 19, 1993, upon a finding of competency, the court ordered Montoya to be returned to the prison to serve the remainder of his sentence. The Board conducted a paper review of Montoya's case on February 27, 1996, and set a rehearing for August 1996 with an alienist report due prior to the hearing. On August 8, 1996, Montoya received his Board disclosure file and signed a form acknowledging receipt. The rehearing was held on August 13, 1996. The Board determined Montoya would not receive credit against his prison sentence for the 267 days he served at the state hospital and set his release date for September 4, 2004. The order was signed December 3, 1996.

¶ 5 On August 11, 2000, Montoya filed a Petition for Extraordinary Relief. On October 1, 2002, Montoya filed a Motion for Summary Judgment asserting the Board may not lengthen an already-sentenced inmate's maximum prison sentence by denying credit for time served at the state hospital. In response, the Board filed a Cross Motion for Summary Judgment arguing the Board properly denied Montoya credit for time served at the state hospital. The court granted the Board's motion, denied Montoya's, and dismissed Montoya's Petition for Extraordinary Relief. Montoya appeals the court's order.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Montoya argues the district court erred in granting the Board's motion for summary judgment. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). "To determine whether a trial court properly granted summary judgment, we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference." *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781. However, when reviewing an appeal from a dismissal of a habeas corpus petition, the record is reviewed in the light most favorable to the findings and judgment and will not be reversed "if there is a reasonable basis therein to support the trial court's refusal to be convinced that the writ should be granted." *Northern v. Barnes*, 870 P.2d 914, 915 (Utah 1993) (quotations and citations omitted).

## ANALYSIS

¶ 7 Montoya argues the trial court erroneously upheld the Board's decision to deny credit for the time Montoya spent at the state hospital where the commitment occurred after Montoya began serving his prison sentence. Generally, it is the Board's "exclusive authority to 'determine the actual number of years a defendant is to serve,' " *Preece v. House*, 886 P.2d 508, 512 (Utah 1994) (citations omitted), and the court does not "sit as a panel of review on the result, absent some other constitutional claim." [3] *Lancaster v. Board of Pardons*, 869 P.2d 945, 947 (Utah 1994). However, we have held that because the Board serves as a sentencing entity in our system, the Board, like the courts, " 'is governed by constitutional requirements addressing accuracy and fairness in the decision-making process.' Thus, while the Board exercises unfettered discretion in determining the length of an inmate's sentence, its actions must not violate the inmate's constitutional rights." *Rawlings v. Holden*, 869 P.2d 958, 961 (Utah Ct.App. 1994) (citations omitted).

¶ 8 In *State v. Fife*, 911 P.2d 989 (Utah Ct.App.1996), we affirmed the trial court's refusal to grant credit for an offender's time spent at the state hospital pursuant to a court order pending his return to competency. *See id.* at 995. Once competent, Fife

---

3. Utah courts have uniformly held the Board has discretion to determine whether or not credit should be granted for time served. *See Sampley v. Morris*, 632 P.2d 837, 839 (Utah 1981) (upholding the Board's denial of credit for time served out-of-state while on escape from Utah); *Andrus v. Turner*, 29 Utah 2d 338, 339, 509 P.2d 363, 364–65 (1973) (upholding the Board's denial of credit for time served to prisoner awaiting extradition while incarcerated in another state); *Ontiveros v. Board of Pardons*, 897 P.2d 1222, 1224 (Utah Ct.App.1995) (upholding the Board's denial of credit for time served for out-of-state incarceration).

was sentenced to one year in prison for pleading guilty to forcible sexual abuse. *See id.* at 990. The trial court refused to give him credit for 265 days he spent at the state hospital. *See id.* The defendant in *Fife* relied upon *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), to support his assertion that the trial court's ruling denying him credit for time served at the state hospital violated his due process rights. *See Fife,* 911 P.2d at 993. In *Jackson,* the United States Supreme Court held that because it was unlikely the defendant in that case would ever regain his sanity, the pre-conviction commitment to a mental hospital was equivalent to a sentence of life imprisonment. *See Jackson,* 406 U.S. at 725, 92 S.Ct. at 1851. The Court stated

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

*Id.* at 738, 92 S.Ct. at 1858. However, in *Fife,* we held the refusal to grant credit for such time did not violate due process under *Jackson* in that Fife could not be held an unreasonable period of time because of the safeguards of Utah Code Annotated section 77–15–6(13) (1995). This statute provides, " 'In no event may the maximum period of detention under this section exceed the maximum period of incarceration which the defendant could receive if he were convicted of the charged offense.' " *Fife,* 911 P.2d at 994 (quoting Utah Code Ann. § 77–15–6(13)). We further stated that by enacting section 77–15–6(13), the Utah Legislature made certain that the situation faced by the defendant in *Jackson* could not occur in Utah. *See id.* at 993–94. Accordingly, we concluded "this procedural safeguard [is] sufficient to meet the fairness requirements of due process as discussed in *Jackson.*" *Id.* at 994.

¶ 9 Subsection (13) was added as a 1994 amendment. *See* Utah Code Ann. § 77–15–6 (1994) (Amendment Notes). Thus, when Montoya was committed to the state hospital in 1992, section 77–15–6 did not contain this safeguard. *See* Utah Code Ann. § 77–15–6 (1992). Furthermore, section 77–15–6 by its terms only applies to "persons incompetent to stand trial." *Id.* § 77–15–6(1) (1992). Thus, because Montoya was convicted, sentenced, and was serving his sentence in prison prior to being adjudicated mentally incompetent, he would not have been protected by this statute in any event. Also in *Fife,* we emphasized that Fife's due process was not violated because the length of his total confinement in prison and at the state hospital did not exceed the maximum possible sentence for the charged offense. *See Fife,* 911 P.2d at 994 n. 6.

¶ 10 Unlike the defendant in *Fife,* the 267 days Montoya served at the state hospital plus his fifteen-year commitment in prison exceeds the maximum sentence for the charged offense.

¶ 11 We see no reason to distinguish between defendants adjudicated incompetent prior to conviction and sentencing and those adjudicated incompetent subsequent to conviction and sentencing. For both groups, due process requires that the maximum period of detention not exceed the maximum period of incarceration for the charged offense.

¶ 12 This view is consistent with authority from other jurisdictions applying the safeguards of *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). Cases relying upon *Jackson* have held that a defendant in a mental facility must be released at the expiration of the maximum sentence for the underlying offense or be civilly committed. *See State ex rel. Deisinger v. Treffert,* 85 Wis.2d 257, 270 N.W.2d 402, 405–06 (1978) (citing *United States v. Ecker,* 543 F.2d 178, 188 (D.C.Cir.1976); *Waite v. Jacobs,* 475 F.2d 392, 399 (D.C.Cir.1973)).

¶ 13 In addition, the Wisconsin Supreme Court stated:

> We find no factually distinguishing features between an incompetent to stand trial and an acquittee by reason of insani-

ty, a convicted sex offender or one under observation as a mentally defective delinquent. In all cases the initial custodial warehousing of such persons in a mental facility is without due process guarantees accorded a civil committee. The inescapable conclusion must be that the expiration of the maximum penalty period under the offense charged is a critical date at which the state must make a determination as to the continued confinement of an incompetent charged with a misdemeanor or minor felony to stand trial. Further, that continued confinement can proceed only after the incompetent has been given the due process guarantees accorded civil committees.

*Deisinger,* 270 N.W.2d at 406.

¶ 14 The State argues that *Rawlings v. Holden,* 869 P.2d 958 (Utah Ct.App.1994), controls this case. We disagree. In *Rawlings,* we held "a district court does not generally have the authority to order the Board of Pardons to credit an inmate's sentence with time served as a condition of probation." *Id.* at 961. The trial court sentenced Rawlings to an indeterminate sentence of five years to life for attempted sodomy on a child but stayed the sentence and placed Rawlings on probation for eighteen months. *See id.* at 959. As part of his probation agreement, Rawlings was to enter and complete the long-term sex offender program at the state hospital. *See id.* at 960. At the end of the probation period, the trial court extended his probation so that he could finish the sex offender program. *See id.* Rawlings failed to complete the program, and consequently, the trial court revoked his probation and committed him to the prison under his original sentence. *See id.* While the trial court recommended to the Board that Rawlings be given credit for the time he spent at the state hospital, the Board declined to do so. *See id.*

¶ 15 Rawlings filed a habeas corpus petition in the district court. *See id.* The habeas court granted Rawlings's petition and ordered the Board to grant Rawlings credit for time served at the state hospital. *See id.* On appeal, we concluded "time served in a secured treatment program as a condition of probation is just that, *a condition of probation,* and is not equivalent to time served in

prison as punishment for committing a crime." *Id.* at 961 (emphasis added). Accordingly, we held there was no violation of fundamental fairness when the Board refused to grant credit for time served as a condition of probation. *See id.* at 962.

■ ¶ 16 Montoya argues *Rawlings* is inapplicable to his case because Rawlings was denied credit for time spent at the state hospital while on probation under the jurisdiction of the trial court, not under the jurisdiction of the Board while sentenced to prison. We agree. In *Rawlings,* we reasoned that it is not a violation of due process for the Board to refuse to grant an inmate credit for time served in the state hospital as a condition of probation against his prison sentence because doing so "lessens the effectiveness of ordering such time as a condition of probation by removing the incentive for the probationer to successfully complete the ordered time in order to avoid serving his prison sentence." *Id.* Montoya was not committed to the state hospital as a condition of probation. Montoya did not "enter[ ] into an agreement with the sentencing court to comply with the conditions of probation as established by that court in exchange for not having to serve a prison sentence" as Rawlings did. *Id.* at 961. After conviction and sentencing, Montoya petitioned the court for mental incompetency proceedings and was subsequently committed to the state hospital for mental health treatment. As our supreme court noted,

> However well intended, the confinement of a person in an institution for mental health treatment is just as effective a restraint on personal liberty as confinement in a prison and may ... be even more trying or burdensome. It is therefore essential that the rights of one so confined be treated with the same degree of respect as are the rights of persons deprived of their liberty upon accusation or conviction of criminal conduct.

*In re Wahlquist,* 585 P.2d 437, 439 (Utah 1978). Because Montoya was not committed to the state hospital as a condition of probation, *Rawlings* does not apply. Furthermore, like Fife's confinement, the length of Rawlings's confinement did not exceed the

maximum possible sentence he could have received for the charged offense. Thus, in *Rawlings,* no violation of due process occurred. *See Rawlings,* 869 P.2d at 962.

¶ 17 The State asks us to adopt a policy that would allow the Board to deny credit for time served in the state hospital that, together with the time served in prison, exceeds the maximum possible sentence for the charged offense. Under this approach, it is possible that Montoya could have served fifteen years in prison plus an indefinite period in the state hospital without violating due process simply because he was committed to the state hospital after sentencing. We are unwilling to adopt such a rule. If Montoya is not released until September 4, 2004, he will have served his maximum sentence of fifteen years in prison plus 267 days in the state hospital. We conclude that denying Montoya credit for time served in the state hospital that, together with the time served in prison, exceeds the maximum sentence for the charged offense violates his right to due process. *See Jackson v. Indiana,* 406 U.S. 715, 738–39, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).[4]

## CONCLUSION

¶ 18 We conclude Montoya's due process rights were violated when the Board refused to grant Montoya credit for the 267 days he was confined in the state hospital in excess of his one-to-fifteen-year sentence. Therefore, we reverse and remand and order that Montoya's original release date of December 11, 2003 be reinstated.

¶ 19 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE JR., Judges.

---

4. Our decision today does not affect the civil commitment procedures under Utah Code Annotated sections 62A–15–628, –629, –631 (Supp. 2003). If at the time of his release Montoya is considered a danger to himself or others, the State may pursue an involuntary commitment to the state hospital or other mental health facility. *See id.* §§ 62A–15–628, –629, –631.